# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY : | |
| : | |
| 580 & 530 SWEDESFORD ASSOCIATES, L.P. : | |
| : | |
| KEYSTONE PROPERTY GROUP, GP, LLC : | |
| : | |
| Plaintiffs : | |
| : | NO. 2:10-CV-04293-CMR |
| v. : | |
| : | |
| ZURICH-AMERICAN INSURANCE COMPANY : | |
| Defendant : | |

## ORDER

AND NOW, on this          day of                    , 2011, upon consideration of plaintiffs' Motion for Summary Judgment and any responses thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED; AND:

1) Summary Judgment is entered in favor of Plaintiffs on Count I (declaratory judgment) and Count II (breach of contract);

2) It is declared that defendant had a primary and non-contributory duty to defend plaintiffs, 580 & 530 Swedesford Associates, L.P. and Keystone Property Group, GP, LLC, in the underlying suit filed in the Court of Common Pleas of Chester County, <u>Gaetano Dadario v. 580 and 530 Swedesford Associates, L.P. et al.</u>, at docket number 08-00924; and

3) Plaintiffs shall submit an affidavit of the their costs of defense within twenty (20) days of the date of this order.

**BY THE COURT:**

_____
, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIREMAN'S FUND INSURANCE COMPANY :
:
580 & 530 SWEDESFORD ASSOCIATES, L.P. :
:
KEYSTONE PROPERTY GROUP, GP, LLC :
:
    Plaintiffs :
: NO. 2:10-CV-04293-CMR
    v. :
:
ZURICH-AMERICAN INSURANCE COMPANY :
    Defendant :

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

Plaintiffs, Fireman's Fund Insurance Company, 580 & 530 Swedesford Associates, L.P., and Keystone Property Group, GP, LLC, by and through their attorneys, Bennett, Bricklin & Saltzburg, LLC, move for summary judgment on Counts I and II of their Complaint, and aver as follows in support of their motion:

1.    For the reasons more fully set forth in the attached brief, plaintiffs seek the entry of summary judgment in their favor on Count I (declaratory judgment) and Count II (breach of contract) of their Complaint.

2.    Plaintiffs request that the Court enter an order requiring defendant, Zurich-American Insurance Company, to reimburse the costs of defense expended by plaintiffs in the defense of the underlying lawsuit filed in the Court of Common Pleas of Chester County, <u>Gaetano Dadario v. 580 and 530 Swedesford Associates, L.P. et al.</u>, at docket number 08-00924, which arose out of Schindler Elevator Corporation's elevator maintenance services performed for plaintiffs, Swedesford and Keystone, as a part of a Continuing Services Contract for elevator maintenance.

WHEREFORE, plaintiffs, Fireman's Fund Insurance Company, 580 & 530 Swedesford Associates, L.P., and Keystone Property Group, GP, LLC, respectfully request that their Motion be GRANTED, and that summary judgment be entered against the defendant on Count I and II of the Complaint, and that Zurich be ordered to reimburse the costs of defense of the underlying suit.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: /s Nicholas A. Cummins (nac7591)
WARREN F. SPERLING, ESQUIRE
IDENTIFICATION NO. 36676
sperling@bbs-law.com
NICHOLAS A. CUMMINS, ESQUIRE
IDENTIFICATION NO. 203238
cummins@bbs-law.com
1601 Market Street, 16th Floor
Philadelphia, PA 19103
215-665-3400
Attorneys for Plaintiffs

Date: March 21, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY : <br> : <br> 580 & 530 SWEDESFORD ASSOCIATES, L.P. : <br> : <br> KEYSTONE PROPERTY GROUP, GP, LLC : <br> : <br> Plaintiffs : <br> : <br> v. : <br> : <br> ZURICH-AMERICAN INSURANCE COMPANY : <br> Defendant : | NO. 2:10-CV-04293-CMR |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

Plaintiffs, Fireman's Fund Insurance Company, 580 & 530 Swedesford Associates, L.P., and Keystone Property Group, GP, LLC, by and through their attorneys, Bennett, Bricklin & Saltzburg, LLC, move for summary judgment on Counts I and II of their Complaint, and submit this brief in support of their motion.

**I. INTRODUCTION**

In this declaratory judgment action, Fireman's Fund Insurance Company (Fireman's Fund) seeks to recover from defendant, Zurich-American Insurance Company ("Zurich"), the costs Fireman's Fund expended to defend its insureds, 580 & 530 Swedesford Associates, L.P. ("Swedesford") and Keystone Property Group, GP, LLC ("Keystone"), against an underlying tort action filed against the insureds by Gaetano Dadario in the Court of Common Pleas of Chester County (the "Dadario suit")[1]. Swedesford and Keystone were also insureds under an Owners and

---

[1] The Dadario Suit was tried to a jury which returned a verdict in favor of all defendants on January 31, 2011. No post trial motions were filed, and the judgment is now final. Consequently, plaintiffs' claims for a declaration that defendant has a duty to indemnify against a resulting judgment are now moot.

Contractors Protective Liability Policy (OCPLP) issued by Zurich to Schindler Elevator Corporation ("Schindler"), which provided primary coverage to Keystone and Swedesford for injuries arising out of Schindler's work for the insureds or the insureds' supervision of Schindler's work. Plaintiffs now move for summary judgment on Count I (declaratory judgment) and Count II (breach of contract) because the Dadario suit alleged a claim that was potentially covered under the OCPLP, thereby triggering Zurich's duty to defend.

## II.  PROCEDURAL HISTORY

On July 27, 2010, plaintiffs filed a complaint for declaratory judgment against defendant in the Court of Common Pleas of Philadelphia County. See Exhibit A, Complaint (exhibits omitted). Count I of the complaint sought a declaratory judgment that defendant was required to defend and indemnify plaintiffs against the Dadario suit under the OCPLP[2]. Count II alleged breach of contract for failing to defend and potentially indemnify plaintiffs under the OCPLP. Count III alleged breach of the duty of good faith and fair dealing for failing to defend and indemnify plaintiffs, and also for failing to acknowledge or respond to plaintiffs' requests for coverage.

Defendant removed this matter to the United States District Court for the Eastern District of Pennsylvania on August 24, 2010. Defendant filed its Answer with Affirmative Defenses on August 30, 2010. See Exhibit B, Answer with Affirmative Defenses (exhibits omitted).

Plaintiffs now move for summary judgment as to Count I (declaratory judgment) and Count II (breach of contract), and seek an order that defendant is required to reimburse all defense costs

---

[2]Count I also sought coverage under a Commercial General Liability (CGL) policy issued by Zurich to Schindler. See Exhibit A at ¶¶ 10-12, 41-61. The requirement that coverage be provided under the CGL policy was originally stated in Schindler's Continuing Service Contract with Swedesford and Keystone, but had been removed by an addendum to the agreement. Consequently, plaintiffs withdraw their claim under the CGL policy.

2

expended in the defense of Keystone and Swedesford in the underlying suit.

## III. FACTUAL OVERVIEW

Swedesford owns and operates a property located at 530 East Swedesford Road, Wayne, Pennsylvania ("Subject Premises"), for which Keystone Property Group, GP, LLC ("Keystone") acts as the property manager. Schindler is in the business of providing elevator maintenance services.

On August 25, 2005, Schindler entered into a "Continuing Service Contract" ("CSC") with Swedesford under which Schindler agreed to provide elevator maintenance services for the Subject Premises. See Exhibit C, Continuing Service Contract. Under an addendum to the CSC, Schindler agreed to "name all required parties as insureds on an Owner's and Contractor's Protective Liability Policy." Exhibit C at Addendum. The "required parties" were the "Owner" and "Manager" - Swedesford and Keystone. Exhibit C at Art. 7.1, Art. 1.

In compliance with the insurance requirements of the CSC, Schindler obtained an OCPLP from Zurich covering the policy period from January 1, 2006 to January 1, 2007 ("Zurich Policy"). See Exhibit K, Relevant Portions of Zurich OCPLP. The OCPLP identified "580 & 530 Swedesford Associates, L.P." as the Named Insured, and "Keystone Properties Group, Inc. & 580 & 30 Swedesford Associates, L.P." as Additional Insureds. Exhibit K at Declarations. The OCPLP covered operations defined as "Elevator Maintenance/Service at 530 & 580 East Swedesford Road, Wayne, PA" by designated contractor, "Schindler Elevator Corporation." Id. at Declarations. Although the terms of the OCPLP will be discussed in greater detail below, it provided coverage for bodily injury "arising out of... Operations performed for you [Swedesford/Keystone] by the 'contractor' [Schindler] at the location specified in the Declarations [the Subject Premises]" or arising out of "[Swedesford/Keystone's] acts or omissions in connection with the general supervision

3

of such operations." Id. at OCPLP Form, Section I, ¶ 1.

As to Schindler's other obligations under the CSC, it agreed to provide a "preventative maintenance program," which required Schindler to "periodically examine, lubricate, adjust, and as needed repair and replace" certain components. Exhibit C at Exhibit A, p. 1. Schindler also agreed to provide "24/7" service dispatching and "call back coverage" (i.e. service calls), under which service or repair issues would be assigned to a Schindler technician. Exhibit C at Exhibit A, p. 2. As explained by Thomas Keil, a Schindler Service Mechanic assigned to the Subject Premises, Schindler performed quarterly preventative maintenance inspections, on-demand service calls, and annual hydraulics testing. See Exhibit H at 9-13, 18-19, 34, Excerpts of Deposition of Thomas Keil.

On or about January 29, 2008, Gaetano Dadario filed a lawsuit against, *inter alia*, Swedesford and Keystone in the Court of Common Pleas of Chester County Pennsylvania, captioned Gaetano Dadario v. 580 and 530 Swedesford Associates, L.P. et al., at docket number 08-00924 ("Dadario suit"). See Exhibit D, Dadario Complaint. The complaint alleged that on August 29, 2006, Dadario was working at the Subject Premises as a security guard when he "was caused to trip and fall over the defective, uneven and/or irregular surface of the elevator floor as he attempted to enter the elevator on the third floor, resulting in serious and permanent injuries..." Id. at ¶ 7[3]. The complaint further alleged that Swedesford and Keystone were responsible for the maintenance of the elevators and were negligent in, *inter alia*, their supervision of the elevator maintenance. Id. at ¶¶ 4, 17. Specifically, Dadario alleged negligence in failing to properly maintain the elevators, failing to

---

[3]Although the complaint's description of the incident is a bit vague, Mr. Dadario testified at his deposition that the elevator did not stop level with the floor, and that he tripped over the resulting differential between the floor and elevator. See L at 54-57, Excerpts of Deposition of Gaetano Dadario.

4

employ reasonable skill in performing maintenance and inspection of the elevators, failing to remedy the uneven condition created by the elevator, and failing to warn of the uneven condition created by the elevator. Id. at ¶¶ 9, 20.

On or about January 9, 2009, Swedesford and Keystone filed a joinder complaint against Schindler in the Dadario Lawsuit. See Exhibit E, Joinder Complaint (exhibits omitted). The joinder complaint alleged that Schindler was obligated to inspect and maintain the elevators in the Subject Premises and that Schindler technicians had been working in the elevators in the days preceding Dadario's accident. Id. at ¶¶ 5 and 11. The joinder complaint also alleged that Schindler was negligent and that its negligence caused Dadario's injuries in that Schindler, *inter alia*, failed to properly maintain the elevators, failed to employ reasonable skill in performing maintenance and inspection of the elevator, failed to remedy the uneven condition created by the elevator, and failed to warn of the uneven condition created by the elevator. Id. at ¶ 15.

In its answer to the joinder complaint, Schindler admitted that it was the elevator maintenance contractor, and that it had performed maintenance on the elevator in question on August 24, 2006 - five days before Dadario's accident. See Exhibit F at ¶¶ 5, 11, 14, Answer to Joinder Complaint (exhibits omitted). Schindler also admitted in its answers to interrogatories that it would have observed the leveling of the elevator at its August 24, 2006 inspection. See Exhibit G at Response 9. Similarly, Mr. Keil admitted at his deposition that he performed routine preventative maintenance on the elevator car on this date, and that he would have ridden in the elevator car to check it for leveling problems. See Exhibit H at 28-30, 32.

The Dadario suit was tried to a jury during the last week of January 2011. On January 31, 2011, the jury returned a verdict against the plaintiff and in favor of all defendants. The jury

answered special interrogatories finding that Swedesford, Keystone, and Schindler were all negligent, but that their negligence was not the factual cause of plaintiff's harm. See Exhibit I, Docket Entries from Dadario Suit. No post-trial motions were filed, and the suit was reduced to judgment on March 3, 2011. Id. Consequently, the underlying verdict is now final.

Swedesford and Keystone were insured by Fireman's Fund under a liability insurance policy covering the policy period from June 30, 2006 to June 30, 2007 ("Fireman's Fund Policy"). See Exhibit J, Relevant Portions of the Fireman's Fund policy. Under the terms of its policy, Fireman's Fund defended Keystone and Swedesford against the Dadario lawsuit. On November 13, 2009 and December 10, 2009, Fireman's Fund tendered Keystone and Swedesford's defense to Zurich. Zurich initially made no response to the tenders, but eventually issued a denial on November 17, 2010 - nearly four months after the filing of the declaratory judgment action.

## IV. LEGAL ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). An issue of fact is genuine only if there is sufficient evidence to permit a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Under this standard, "The moving party first must show that no genuine issue of material fact exists. ...The burden then shifts to the non-moving party to set forth specific facts demonstrating a genuine issue for trial." Adderly v. Ferrier, 2011 WL 816204 at *1 (3d Cir. 2011), citing, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## B. Standard for Determining an Insurer's Duty to Defend

Pennsylvania has adopted a liberal standard for triggering the insurer's duty to defend, which focuses upon whether there is any possibility of a covered claim set out in the pleadings.

"An insurer's duty to defend is broader than it duty to indemnify." American and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 2 A.3d 526, 540 (Pa. 2010) (citations omitted). "An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Id. at 541 (citations omitted). "As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." Id., quoting, Casper v. American Guarantee & Liability Ins. Co., 408 Pa. 426, 184 A.2d 247 (1962) (additional citations omitted). "Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the duty to defend." Jerry's Sports, 2 A.3d at 541. Indeed, the courts have even looked beyond the allegations of the complaint to discovery produced in the underlying suit to trigger the duty to defend. See Heffernan & Co. v. Hartford Ins. Co. of America, 418 Pa. Super. 326, 614 A.2d 295 (1992) (finding that insurer's duty to defend was triggered by covered damages claimed in the underlying plaintiff's answers to interrogatories, despite the fact that those damages were not alleged in the complaint).

"An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." Jerry's Sports, 2 A.3d at 541 (citations omitted). In determining the duty to defend, "the 'factual allegations of the underlying complaint against the insured are taken as true and liberally construed in favor of the insured." Id., quoting, Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742 (3d Cir. 1999). The duty to defend

7

exists even if the allegations of the complaint are groundless, false or fraudulent. Id. (citations omitted). In this case, the Dadario suit alleged a potentially covered claim, triggering Zurich's duty to defend Swedesford and Keystone.

### C. Zurich Owed a Duty to Defend

In order to determine Zurich's duty to defend, one must first examine the relevant policy language. The insuring agreement to the Zurich OCPLP provides:

> a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **We will have the right and duty to defend the insured against any "suit" seeking those damages.** However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" and arises out of:
>
> > (a) Operations performed for you by the "contractor" at the location specified in the Declarations; or
> >
> > (b) Your acts or omissions in connection with the general supervision of such operations; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period....

Exhibit K at OCPLP Form, Section I, ¶ (1) (emphasis added). There can be no question that the Dadario suit sought damages for "bodily injury[4]" caused by an "occurrence[5]" "during the policy

---

[4] "'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." See Exhibit K at OCPLP Form, Section V, ¶ 2.

[5] "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Exhibit K at OCPLP Form, Section V, ¶ 11.

8

period[6]." Furthermore, there can be no question that Schindler was the "contractor," the "operations" were "Elevator Maintenance/Service," the "location specified in the Declarations" was the Subject Premises, and that "you" and "your" referred to the named insured or additional insureds, which included Swedesford and Keystone. It is also significant that the phrase "arising out of" as used in an insurance policy has been interpreted to require only "but for causation," and that the closer causal nexus of proximate causation is not required. McCabe v. Old Republic Ins. Co., 425 Pa. 221, 223, 228 A.2d 901, 903 (Pa. 1967). Also of note, there is no requirement in the insuring agreement that Schindler be negligent - only that the harm "arise out of" its operations.

Applying these definitions to the insuring agreement, Zurich's duty to defend was triggered if the Dadario suit alleged a claim that "potentially" or "might or might not" have been causally connected in some manner (not rising to the level of negligence) to "[elevator maintenance/service] performed for [Swedesford and Keystone] by [Schindler] at [the Subject Premises]," or "[Swedesford and Keystone's] acts or omissions in connection with the general supervision of [Schindler's elevator maintenance/service]." Reviewing the materials from the underlying suit, it becomes apparent that a potentially covered claim was alleged, and that Zurich was required to assume Swedesford and Keystone's defense.

Dadario's complaint alleged that he was injured at the Subject Premises by a defective condition in the elevator, and that both Swedesford and Keystone either "had under its care, **supervision**, control, maintenance and/or **was responsible for** the care, maintenance and condition" of the elevators at the Subject Premises. See Exhibit D at ¶¶ 4, 17 (emphasis added). The complaint

---

[6]The policy period ran from January 1, 2006 to January 1, 2007. See Exhibit K at Declarations. Dadario's injury occurred on August 29, 2006.

9

further alleged that Swedesford and Keystone were negligent in "maintain[ing] the elevators," "performing maintenance and inspections of the said elevators," "allowing the elevator in question to be and remain in a dangerous and unsafe condition," "failing to properly inspect the elevators," and "failing to correct, remedy, repair and/or eliminate the said defective condition." Id. at ¶¶ 9(a-e), 20(a-e). In other words, the complaint alleges not only that Keystone/Dadario were liable for their own maintenance or inspection, but were also "responsible for" for their "supervision" of the elevator maintenance performed at the Subject Premises.

Dadario's complaint, read lone, clearly alleges that the harm was caused by the negligent maintenance of the elevator and Keystone/Swedesford's negligent supervision of that maintenance. Given that Schindler was indisputably the elevator maintenance contractor, that it admits it was present within days prior to the accident to perform maintenance, and that these services should have inspected for the very condition that caused plaintiff's fall, plaintiff's complaint certainly pleads a potentially covered claim. Furthermore, the fact that Schindler's negligence is not specifically alleged in plaintiff's complaint does nothing to change the analysis. As discussed above, the OCPLP does not require that Schindler be negligent to trigger coverage. It is only necessary that the harm arise out of (or potentially arise out of) Schindler's elevator maintenance services. Thus, plaintiff's complaint alone demonstrates that the Dadario suit alleged a potentially covered claim, triggering Zurich's duty to defend.

Should there remain any question on this point, it is laid to rest by the joinder complaint. The joinder complaint specifically alleges that Schindler was the elevator maintenance contractor (which Schindler admits), that Schindler performed maintenance of the elevators within days of the incident (which Schindler admits), and that Schindler was negligent in performing that maintenance, which

10

caused plaintiff's harm. Exhibit E at ¶¶ 5, 11, 14, 15; Exhibit F at ¶¶ 5, 11, 14. Thus, even if the complaint alone were not sufficient to establish a potentially covered claim, the joinder complaint and the admissions made by Schindler in response to it certainly brought the claim within the scope of the insuring agreement.

Finally, even if the Court were to conclude that the complaint, joinder complaint, and answer to the joinder complaint were not sufficient to allege a covered claim, the fact that the claim was one potentially arising out of Schindler's elevator maintenance work is established by Schindler's maintenance worker's testimony that he inspected the elevator five days before the incident, Exhibit H at 28-30, Schindler's admissions in answers to interrogatories that its August 24, 2006 inspection should have assessed the leveling of the elevator, Exhibit G at Response 9, and the jury's conclusion that Schindler was, in fact, negligent in performing the work. Exhibit I. All of these facts clearly demonstrate that Dadario's claim was one arising out of Schindler's maintenance services performed for Swedesford and Keystone at the subject premises.

Since the complaint, joinder complaint, answer to the joinder complaint, and discovery in the underlying case, taken alone or in combination, demonstrate that the Dadario suit alleged bodily injury caused by an occurrence which arose out of Schindler's elevator maintenance services performed at the Subject Premises, or Swedesford and Keystone's supervision of that work, the claim was one potentially falling within the scope of the coverage provided by the policy, and Zurich was required to defend Keystone and Swedesford against the Dadario suit[7].

---

[7]Plaintiffs understand that defendant may assert that one or more exclusions in the Zurich policy apply to preclude coverage. Since it is the insurer's burden to establish the applicability of an exclusion, plaintiffs will address any exclusions if and when they are raised by defendant. See Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 605, 735 A.2d 100, 106 (1999).

11

### D. The Zurich Policy Provided Primary Coverage and the Fireman's Fund Policy Provided Excess Coverage.

Since Zurich had a duty to defend Keystone and Swedesford against the underlying suit, and there is no dispute that Fireman's Fund also had a duty to defend Keystone and Swedesford, the question of whether and to what extent Fireman's Fund is entitled to reimbursement of the defense costs supplied becomes one of primacy. This issue is easily resolved.

Under the express terms of the OCPLP, the coverage provided by that policy is primary and may not seek contribution from any other policy. The "Other Insurance" clause in the OCPLP provides:

> The insurance afforded by this Coverage Part **is primary insurance and we will not seek contribution from any other insurance available to you** [Keystone and Swedesford] unless the other insurance is provided by a contractor other than the designated "contractor" for the same operation and job location designated in the Declarations. Then we will share with that other insurance by the method described below.

Exhibit K at OCPLP Form, Section IV, ¶ (8), p. 6 of 8 (emphasis added). Since the coverage provided by the Fireman's Fund policy is not coverage obtained by another contractor, the Zurich Policy provided primary non-contributory coverage by its express terms and Zurich is solely liable for Swedesford and Keystone's defense costs.

Similarly, the Fireman's Fund policy stipulates that it is excess over the Zurich policy. Its "Other Insurance" clause provides:

> This insurance is excess over:
>
> * * *
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations... for which you have been added as an additional insured by attachment of an endorsement.

12

Exhibit J, at CGL Form, Section IV, ¶ 4(b)(2), p. 12 of 17. As discussed above, both Swedesford and Keystone were identified as additional insureds on OCPLP, Exhibit K at Declarations, and the Fireman's Fund policy specifically covered 530 E. Swedesford Road as an insured "premises." Exhibit J at General Liability Schedule, "Premise 13." As such, the Fireman's Fund policy is excess over the Zurich Policy. Moreover, even if the Fireman's Fund policy were not excess, the Zurich policy expressly makes itself primary and disclaims any right to contribution from the Fireman's Fund policy. For these reasons, the Zurich Policy provides sole, primary coverage, and Zurich must reimburse Fireman's Fund for all defense costs expended in the defense of the Dadario suit.

### E. Zurich Must Reimburse Pre-Tender Fees

Under Pennsylvania law, an insurer who wrongfully disclaims the duty to defend must reimburse defense costs not only from the date of the defense tender forward, but also for any pretender defense costs incurred, unless the insurer can show prejudice from the delay. In this case, prejudice cannot be shown because Zurich would have denied the claim on substantive grounds, regardless of when the defense was tendered.

In Brakeman v. Potomac Ins. Co., 472 Pa. 66, 76-77, 371 A.2d 193, 198 (1977), the Pennsylvania Supreme Court ruled that "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." This premise extends beyond the duty to indemnify, and has also been applied to the duty to defend.

In Rite Aid v. Liberty Mut. Fire Ins. Co., 2006 WL 2376238 at *5 (M.D. Pa. Aug. 14, 2006), Rite Aid's insurer refused to reimburse Rite Aid for pre-tender fees incurred in the defense of a claim

by a former employee. Ordering the reimbursement of pre-tender fees, the court refused to "read *Brakeman* narrowly to hold that, absent prejudice, an insurer has a duty to defend, but that duty only arises after notice." Id. at *5. The Rite Aid court instead pointed to Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 961 F.2d 209 (2d Cir. 1992) (table), in which the Third Circuit Court of Appeals, in an unpublished, non-precedential decision, reversed the Eastern District of Pennsylvania's decision in Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F.Supp. 324 (E.D. Pa. 1991) that pre-tender fees were not recoverable. Rite Aid, 2006 WL 2376238 at *5. The Rite Aid court also relied on the Tenth Circuit Court of Appeals holding in TPLC, Inc. v. United Natl. Ins. Co., 44 F.3d 1584 (10th Cir. 1995), where the court applied Pennsylvania law to conclude, "in the absence of a showing of prejudice, the insurer's duty to defend includes the duty to reimburse for reasonable costs of defense incurred prior to notice, as well as for subsequent defense costs." Rite Aid, 2006 WL 2376238 at *5, quoting, TPLC, 44 F.3d at 1493.

The reasoning behind Brakeman and its progeny is that insurance contracts are contracts of adhesion which the insured has no ability to negotiate. Brakeman, 472 Pa. at 72-73, 371 A.2d at 196. Additionally, Brakeman recognized that any rule denying the insured coverage for late notice is, at its heart, a forfeiture because the insured paid premiums for the benefit it was being denied. Id. at 73-74, 371 A.2d at 196-97. Brakeman was "reluctant, therefore, to allow an insurance company to refuse to provide that which it was paid for unless a sound reason exists for doing so." Id. at 74, 371 A.2d at 197. Observing that the purpose of the notice provision in a policy was to "protect the insurance company's interests from being prejudiced," Brakeman concluded that "where the insurance company's interests have not been harmed by a late notice... the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance

14

company of its obligations under the policy in such a situation." Id. at 75, 371 A.2d at 197.

Brakeman's reasoning applies equally to defense costs, as the courts cited above correctly concluded. The apparent purpose of refusing the recovery of pre-tender defense costs is because the insurer had no ability to control costs incurred before it was put on notice of the claim and, potentially, could have incurred costs it would not have otherwise incurred. This purpose is not met, however, when the costs actually incurred were not different than those the insurer would have incurred had it been notified of the claim from the outset. Furthermore, in a case such as this, where the insurer disclaimed coverage upon receiving the tender of defense, it can hardly be seen to then argue that it would have handled the defense differently had the claim been tendered at an earlier date. In either event, it would have disclaimed coverage. Thus, denying pre-tender fees would not serve the purposes of the notice clause in the policy, and the clause should not be enforced.

Since Pennsylvania law permits the recovery of pre-tender defense costs absent a showing of prejudice, and because Zurich cannot possibly show prejudice where it disclaimed coverage upon receiving the tender, Zurich is required to reimburse all defense costs incurred to defend Keystone and Swedesford against the Dadario suit.

V.  **CONCLUSIONS**

Zurich was required to defend Swedesford and Keystone against the Dadario lawsuit because the suit was one that sought to recover damages for bodily injury caused by an occurrence arising out of Schindler's elevator services performed for Keystone and Swedesford at the Subject Premises, and/or for Keystone and Swedesford's allegedly negligent supervision of Schindler's work. Since the coverage provided by the Zurich policy is primary and non-contributory, Zurich must reimburse Fireman's Fund for all defense costs incurred to defend Keystone and Swedesford against the

Dadario suit. For these reasons, plaintiffs respectfully request that the Court enter summary judgment in their favor on Counts I and II of the complaint, and order Zurich to reimburse all costs incurred to defend Keystone and Swedesford against the Dadario suit[8].

>Respectfully submitted,
>
>**BENNETT, BRICKLIN & SALTZBURG LLC**
>
>BY: /s Nicholas A. Cummins (nac7591)
>WARREN F. SPERLING, ESQUIRE
>IDENTIFICATION NO. 36676
>sperling@bbs-law.com
>NICHOLAS A. CUMMINS, ESQUIRE
>IDENTIFICATION NO. 203238
>cummins@bbs-law.com
>1601 Market Street, 16th Floor
>Philadelphia, PA 19103
>215-665-3400
>Attorneys for Plaintiffs

Date: March 21, 2011

---

[8]Plaintiffs will submit evidence of their defense costs if their motion is granted.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY<br><br>580 & 530 SWEDESFORD ASSOCIATES, L.P.<br><br>KEYSTONE PROPERTY GROUP, GP, LLC<br><br>Plaintiffs<br><br>v.<br><br>ZURICH-AMERICAN INSURANCE COMPANY<br>Defendant | NO. 2:10-CV-04293-CMR |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing motion for summary judgment was served on all interested parties on this date by electronic filing with the court or regular mail, postage pre-paid, addressed as follows:

Marc J. Syken, Esquire
Bodell, Bove', Grace & Van Horn, P.C.
One Penn Square West, 6th Floor
30 South 15th Street
Philadelphia, PA 19102

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: /s Nicholas A. Cummins (nac7591)
WARREN F. SPERLING, ESQUIRE
IDENTIFICATION NO. 36676
sperling@bbs-law.com
NICHOLAS A. CUMMINS, ESQUIRE
IDENTIFICATION NO. 203238
cummins@bbs-law.com
1601 Market Street, 16th Floor
Philadelphia, PA 19103
215-665-3400
Attorneys for Plaintiffs

Date: March 21, 2011