## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIREMAN'S FUND INSURANCE COMPANY     :
    :
580 & 530 SWEDESFORD ASSOCIATES, L.P.     :
    :
KEYSTONE PROPERTY GROUP, GP, LLC     :
    :
        Plaintiffs     :
    :     NO. 2:10-CV-04293-CMR
        v.     :
    :
ZURICH-AMERICAN INSURANCE COMPANY :
        Defendant     :

## ORDER

     AND NOW, on this       day of               , 2011, upon consideration of defendant's Motion for Summary Judgment and plaintiffs' response thereto, it is hereby ORDERED and DECREED that the Motion is DENIED.

**BY THE COURT:**

                                      , U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIREMAN'S FUND INSURANCE COMPANY :
:
580 & 530 SWEDESFORD ASSOCIATES, L.P. :
:
KEYSTONE PROPERTY GROUP, GP, LLC :
:
      Plaintiffs :
:     NO. 2:10-CV-04293-CMR
:
      v. :
:
ZURICH-AMERICAN INSURANCE COMPANY :
      Defendant :

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

Plaintiffs, Fireman's Fund Insurance Company, 580 & 530 Swedesford Associates, L.P., and Keystone Property Group, GP, LLC, by and through their attorneys, Bennett, Bricklin & Saltzburg, LLC, oppose defendant's motion for summary judgment, and aver as follows in opposition:

    1.    Admitted.

    2.    Admitted.

    3.    It is admitted that defendant quotes accurately from the cited documents. It is denied that defendant fully cites the documents in questions, and any characterization of the contents of those documents are denied as the documents speak for themselves. It is denied that coverage is excluded when Schindler is not in the physical act of servicing the elevators. To the contrary, the exclusion at issue was not intended to apply to a continuing service contract. It was intended to apply to specific contracts to perform a single, discrete function. Furthermore, Schindler's obligation to provide continuing maintenance and inspections could not be completed by definition until the termination of the contract on August 29, 2010 - three years after Dadario's accident.

4.      Admitted.

## I.      FACTUAL BACKGROUND

### A.      The Instant Coverage Action

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.      Admitted.

### B.      The Underlying Litigation

11.      It is admitted that the allegations of this paragraph are generally correct.  It is denied that the allegations fully set out the claims at issue in the Dadario complaint, and any characterization of the Dadario complaint is denied as the Complaint is a document that speaks for itself.

12.      It is admitted that the allegations of this paragraph are generally correct.  It is denied that the allegations fully set out the claims at issue in the Dadario complaint, and any characterization of the complaint is denied as the complaint is a document that speaks for itself.  By way of further response, the Dadario complaint also alleged that Keystone and Swedesford were liable for their supervision of the elevator maintenance, and that Keystone and Dadario were not only directly negligent for their maintenance of the elevator, but were also "responsible for" maintenance performed by others.  Specifically, the complaint alleged that Keystone and Swedesford "**had under its care**, supervision control, maintenance **and/or was responsible for the care**, maintenance and condition of said property...".  See Exhibit D to Plaintiffs' Motion for Summary Judgment at ¶¶ 4,

17.

13. Admitted in part and denied in part for the reasons set forth in response to paragraph 13, which is incorporated by reference.

14. Admitted. By way of further response, Dadario could have recovered from Schindler by operation of law through the joinder complaint filed against Schindler by Keystone and Swedesford, assuming that Schindler was not held solely liable. <u>See</u> Pa. R. Civ. Pro. 2255(d) ("The plaintiff shall recover from the an additional defendant found liable to the plaintiff alone or jointly with the defendant as though such additional defendant had been joined as a defendant and duly served **and the initial pleading of the plaintiff had averred such liability**.") (emphasis added).

## 1. <u>Joinder of Schindler Elevator Corporation</u>

15. It is admitted that the allegations of this paragraph are generally correct, and that defendant has quoted accurately from the joinder complaint. It is denied that the allegations fully set out the claims at issue in the joinder complaint, and any characterization of the joinder complaint is denied as the joinder complaint is a document that speaks for itself.

16. Admitted.

## 2. <u>Outcome of the *Dadario* Litigation</u>

17. Admitted.

18. Admitted.

## C. <u>The Continuing Service Contract</u>

19. Admitted.

20. Admitted.

21. Admitted. The attachment of the contract for the neighboring property without the

3

referenced Addendum was an error.

22.     Admitted.

23.     Admitted.  Consequently, plaintiffs withdraw any claims under Zurich's CGL coverage form.

**D.     Zurich OCPL Grant of Coverage**

24.     Admitted. By way of further response, the OCPL also identified "Keystone Properties Group, Inc. & 580 & 530 Swedesford Associates, L.P." as Additional Insureds.

25.     Admitted in part and denied in part.  It is admitted that the designated contractor is correctly averred.  It is denied that the location of the covered operation is correctly averred.  The location of the covered operation is defined as "Elevator Maintenance/Service at 530 & 580 East Swedesford Road, Wayne, PA."

26.     It is admitted that the quoted excerpt appears in the OCPL.  It is denied that the quoted language fully sets out the terms and conditions of the OCPL.

27.     It is admitted that the quoted excerpt appears in the OCPL.  It is denied that the quoted language fully sets out the terms and conditions of the OCPL.

**1.     Exclusions to Coverage**

28.     It is admitted that the quoted excerpt appears in the OCPL.  It is denied that the quoted language fully sets out the terms and conditions of the OCPL.

29.     It is admitted that the quoted excerpt appears in the OCPL.  It is denied that the quoted language fully sets out the terms and conditions of the OCPL.

**II.     ARGUMENT**

30.     Admitted.

31.     Denied as a conclusion of law to which no response is required. By way of further response, this rule does not require the Court to ignore known and undisputed facts of record in determining the duty to defend. The Court's obligation to liberally construe the complaint in favor of the insured allows the Court to consider such facts, because they can be reasonably inferred from the allegations in the complaint, and create the potential that the insured could actually be held liable for a covered claim.

32.     Admitted. By way of further response, the presence or absence of allegations of Schindler's negligence is irrelevant because the insuring agreement requires only that the harm "arise out of" Schindler's operations, and not that those operations were negligently performed. In addition, the complaint specifically alleges Keystone and Swedesford's negligence in supervising the maintenance of the elevators, and Dadario could recover for Schindler's negligence by operation of law through Keystone and Swedesford's joinder complaint as if Dadario had averred those allegations himself in his complaint. See Pa. R. Civ. Pro. 2255(d).

33.     Admitted. By way of further response, there were also no allegations in Dadario's complaint that Schindler was not performing work on the elevator at the time of the accident. Furthermore, for the reasons set forth in response to paragraph 3 and in the attached brief, this fact is not relevant to the coverage determination.

34.     It is admitted that Schindler was not physically present and working on the property at the time of the accident, although this statement is neither affirmed nor denied in Dadario's complaint. It is denied, however, that the accident did not arise out of Schindler's ongoing operations, as the continuing service contract required continuous and ongoing inspections and maintenance of the elevators. See Exhibit C to Plaintiffs' Motion for Summary Judgment at Exhibit

5

A; see Exhibit D to Plaintiffs' Motion for Summary Judgment at 9-13, 18-19, 34. Consequently, Schindler's operations were ongoing and not "completed" at the time of the accident.

35.     It is admitted that defendant quotes accurately from the cited document. It is denied that defendant fully cites the document in question, and any characterization of the contents of that document are denied as the document speaks for itself.

36.     It is admitted that the allegations of this paragraph are generally correct. It is denied that the allegations fully set out the claims at issue in the Dadario complaint, and any characterization of the Dadario complaint is denied as the Complaint is a document that speaks for itself.

37.     Denied. To the contrary, Schindler's obligation to perform continuous and ongoing maintenance and inspections is, by definition, ongoing and could not be "completed" until the contract expired on August 29, 2010. Further, the obligation to inspect and maintain cannot be "put to its intended use." This is not a situation where Schindler was hired to install a physical part or item, such as an elevator, in which case the work would be put to its intended use when the elevator was used as an elevator. In this case, the work was an ongoing maintenance and inspection service which is incapable of being put to any intended use. Schindler's failure arose not from its defective installation of a component, but from its failure to properly inspect and identify hazards.

38.     Denied for the reasons set forth in response to paragraph 37. By way of further response, the "put to intended use" portion of the exclusion is inapplicable because an obligation to "inspect" can never be put to its intended use. The "intended use" portion of the exclusion was plainly intended to define when a particular project (i.e installation of an elevator) would be "completed." It was not intended to apply to service and maintenance agreements. Here, Schindler's negligence derived from its failure to properly perform its ongoing inspection obligations. Since the

inspection of the elevator could never be put to its "intended use," the exclusion does not apply. By way of further response, none of the extra-jurisdictional cases cited by defendant construe Pennsylvania law or are binding on this Court. Given the fact that Schindler contracted to provide continuing and ongoing services, the work completed or put to intended use exclusion is ambiguous, at best. Consequently, it must be construed against Zurich and in favor of coverage.

39. Denied as a conclusion of law to which no response is required. By way of further response, the filing of the joinder complaint allowed Dadario to recover from Schindler by operation of law as if Schindler had been directly named in Dadario's complaint, provided that Schindler was not found solely negligent. See Pa. R. Civ. Pro. 2255(d). By way of further response, reliance upon the joinder complaint is not necessary to trigger defendant's coverage obligations because (1) Dadario's complaint alleged that Keystone and Swedesford were negligent in supervising the maintenance and inspections of the elevators, (2) it is undisputed and admitted that Schindler was the elevator maintenance contractor tasked with the maintenance and inspection of the elevators, and (3) it is undisputed and admitted that Schindler's elevator inspection conducted shortly before Dadario's accident should have checked for the very leveling problem alleged to have caused Dadario's injury. See Exhibit F to Plaintiffs' Motion for Summary Judgment at ¶¶ 5, 11, 14, Answer to Joinder Complaint; See Exhibit G to Plaintiffs' Motion for Summary Judgment at Response 9, Schindler's Responses to Interrogatories; See Exhibit H to Plaintiffs' Motion for Summary Judgment at 9-13, 18-9, 28-30, 32, 34, Excerpts of Deposition of Thomas Keil. These allegations are broad enough to trigger Zurich's duty to defend, even if Schindler is not identified in the plaintiff's complaint by name. Such a conclusion is consistent with Pennsylvania's mandate that the allegations of the complaint be liberally construed in favor of the insured. See American and Foreign

Ins. Co. v. Jerry's Sport Center, Inc., 2 A.3d 526, 540 (Pa. 2010); Heffernan & Co. v. Hartford Ins. Co. of America, 418 Pa. Super. 326, 614 A.2d 295 (1992).

40.     Denied.   To the contrary, Dadario's complaint specifically pled Keystone and Swedesford's negligence in supervising the maintenance and inspection of the elevators - an obligation that Schindler indisputably undertook and an exception to the terms of the "your acts or omissions" exclusion.   Furthermore, even if the exclusion did apply with respect to Keystone and Swedesford's direct, active negligence, the exclusion would not remove coverage for vicarious liability imposed upon Keystone and Swedesford for Schindler's negligent failure to inspect and maintain the elevators.   Given that Dadario alleged not only Keystone and Swedesford's direct negligence in failing to maintain and inspect the elevators, but also its failure to supervise the maintenance and inspection of the elevators and that they were "responsible for" the maintenance of the elevators, the claim was clearly broad enough to plead vicarious liability for the acts of the elevator maintenance contractor - Schindler in this case.   Thus, the "your acts or omissions" exclusion would not vitiate the duty to defend.

WHEREFORE, plaintiffs, Fireman's Fund Insurance Company, 580 & 530 Swedesford Associates, L.P., and Keystone Property Group, GP, LLC, respectfully request that defendant's Motion be DENIED.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: /s Nicholas A. Cummins (nac7591)
WARREN F. SPERLING, ESQUIRE
IDENTIFICATION NO. 36676
sperling@bbs-law.com
NICHOLAS A. CUMMINS, ESQUIRE
IDENTIFICATION NO. 203238
cummins@bbs-law.com
1601 Market Street, 16th Floor
Philadelphia, PA 19103
215-665-3400
Attorneys for Plaintiffs

Date: April 11, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY : | |
| : | |
| 580 & 530 SWEDESFORD ASSOCIATES, L.P. : | |
| : | |
| KEYSTONE PROPERTY GROUP, GP, LLC : | |
| : | |
| Plaintiffs : | NO. 2:10-CV-04293-CMR |
| : | |
| v. : | |
| : | |
| ZURICH-AMERICAN INSURANCE COMPANY : | |
| Defendant : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT'S OF MOTION FOR SUMMARY

Plaintiffs, Fireman's Fund Insurance Company, 580 & 530 Swedesford Associates, L.P., and

Keystone Property Group, GP, LLC, by and through their attorneys, Bennett, Bricklin & Saltzburg,

LLC, oppose defendant's motion for summary judgment, and submit this brief in opposition thereto.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Zurich's motion for summary judgment is premised on three claims. First, Zurich argues that

there is no duty to defend because Schindler is not specifically identified by name in Dadario's

complaint, and because the Court cannot look beyond the allegations of the complaint to determine

the duty to defend. This position is unavailing because Dadario's complaint alleged that Swedesford

and Keystone were negligent in supervising the maintenance of the elevator work. This allegation,

both alone and in conjunction with the undisputed fact that Schindler was the elevator contractor

tasked with inspection and maintenance of the elevator in question, is sufficiently broad to trigger

Zurich's duty to defend. This is particularly true when a jury actually determined that Zurich was

negligent in performing these very tasks. The requirement that the Court look to the allegations in

the complaint to determine the duty to defend, does not require the Court to willfully ignore undisputed facts, particularly when those facts were decided by a jury in the underlying case and formed a potential basis for Dadario to recover from Schindler by operation of law through the joinder complaint.

Second, Zurich contends that coverage is excluded by the "work completed or put to intended use" exclusion. At best this exclusion is ambiguous in the context of this claim, requiring the exclusion to be narrowly construed in favor of coverage. Specifically, Schindler's obligation was to provide continuous and ongoing inspection and maintenance services for the elevator in question. By definition, these maintenance obligations cannot be "completed" until the expiration of the contract. Similarly, the "put to intended use" portion of the exclusion is inapplicable because an obligation to "inspect" can never be put to its intended use. The "intended use" portion of the exclusion was plainly intended to define when a particular project (i.e installation of an elevator) would be "completed." It was not intended to apply to service and maintenance agreements. Here, Schindler's negligence derived from its failure to properly perform its ongoing inspection obligations. Since the inspection of the elevator could never be put to its "intended use," the exclusion does not apply.

Third, Zurich argues that coverage is excluded by the "your acts or omissions" exclusion. This exclusion does not apply because Dadario's complaint charged Keystone and Swedesford with negligence in their supervision of the maintenance of the elevator, and negligence in the supervision of Schindler's work is an exception to the exclusion. Furthermore, the exclusion does not apply to vicarious liability imposed upon Keystone and Swedesford for Schindler's conduct. Since Dadario sought to hold Swedesford and Keystone liable for the supervision of the elevator maintenance and

further alleged not only that Keystone/Swedesford were directly negligent, but were also "responsible for" the maintenance of the elevator, the complaint was certainly broad enough to plead vicarious liability for Schindler's maintenance work. This is particularly true when Dadario could recover directly from Schindler by operation of law upon the filing of the joinder complaint, as if Dadario had pled those allegations in his complaint. Consequently, the duty to defend remained, notwithstanding this exclusion.

## II.      FACTUAL OVERVIEW

Plaintiffs' incorporate by reference the factual averments contained in their Motion for Summary Judgment as if the same were fully set forth here at length.

## III.     LEGAL ARGUMENT

### A.      <u>Zurich's Duty to Defend was Triggered by the Facts of the Underlying Suit</u>

Zurich initially contends that it had no duty to defend because Dadario's complaint did not allege that Schindler's negligent, ongoing work while physically present on the property caused Dadario's harm. Zurich makes this argument primarily by reliance upon the rule that the duty to defend is triggered by the allegations of the complaint. While plaintiffs acknowledge this rule, Zurich attempts to extend the rule to unreasonable bounds. Zurich prevails upon the Court to ignore undisputed, admitted, and judicially determined facts at issue in the underlying suit, and to demand that the underlying complaint fastidiously and precisely allege every fact required to trigger coverage under the insuring agreement. While it is true that the allegations of the complaint determine the duty to defend, the Court's obligation to liberally construe the allegations of the complaint in favor of the insured requires that the Court not rely upon a hyper-technical reading of the complaint made in a vacuum and without consideration of the undisputed facts of the matter.

That the Court is not required to analyze the complaint through blinders is demonstrated by the Superior Court of Pennsylvania's decision in Heffernan & Co. v. Hartford Ins. Co. of America, 418 Pa. Super. 326, 614 A.2d 295 (1992). In Heffernan, the insured contractor was sued by a building owner when the roof of the building constructed by the insured collapsed. Id. at 328, 614 A.2d at 295-96. In its complaint, the property owner sought to recover only the costs to repair the building. Id. Since the costs to repair the building constructed by the insured were clearly excluded by the "damage to your work" exclusion in the insured's policy, its insurer refused to defend. Id. at 328-29, 614 A.2d at 296-97. During the course of the underlying suit, however, the plaintiff filed answers to interrogatories in which it claimed not only repair costs, but also the costs to replace the contents of the building damaged by the collapse. Id. Since damage to "other property" (i.e. the contents of the building) did not fall within the exclusion, the insured filed a declaratory judgment action against its insurer seeking a defense. Id.

On appeal in the declaratory judgment claim (following the trial court's order that the insurer was required to defend), the insurer argued that "its duty to defend must be determined from the averments of the complaint and cannot be enlarged by answers to interrogatories subsequently filed in the underlying action. Because the complaint in the underlying action has not been amended to include damages to the building contents... there is no basis for finding coverage in the underlying action." Id. at 329-330, 614 A.2d at 296-97. The Superior Court soundly rejected this argument, explaining:

> The averments of the complaint support [the insurer's] contention that the complaint sought to recover only the cost of repairs to the building. It was only the cost of restoring the "building" for which recovery was sought. **When the answers to interrogatories were filed, however, the potential for an additional loss became apparent**. Then, for the first time, a reference was made to damages which had

alleged occurred to contents of the building. **When this potential became apparent, we conclude, [the insurer] incurred a duty to defend**.

Id. at 332, 614 A.2d at 298 (emphasis added). Brushing aside the insurer's contention that the complaint had not yet been amended to claim damages to the contents, the Superior Court said,

> Both [the insured] and [the insurer] are now on notice that a claim for damage to the contents of the building will probably be made in the underlying claim. If that occurs, coverage will become clear. In the meantime, we conclude, the insurer has an obligation to enter an appearance on behalf of its insured in the underlying action and defend the action. This duty will continue unless and until the claim asserted against the insured can be confined to a recovery which the policy does not cover.

Id. at 332-33, 614 A.2d at 298. Thus, relying both upon the complaint and also the actual and undisputed facts of the claim, the Court determined that the insurer had a duty to defend. It did not pretend that the covered claim did not exist simply because certain undisputed facts did not appear in the complaint, and recognized the actual potential that the insured would be held liable for a covered loss[1].

Heffernan does not contradict the general rule that the duty to defend is determined by the allegations in the complaint. Rather, it is a recognition of the fact that the true test is the presence of potential liability for a claim that would be covered by the policy. In Heffernan, there was the

---

[1]The concept that not every detail need be alleged in the underlying claim to trigger the duty to defend is not foreign to the Courts of the Third Circuit. See Berg Chilling Systems, Inc. v. Hull Corp., 70 Fed. Appx. 620, 624-25 (3d Cir. 2003) (citing Heffernan for the proposition that "a reviewing court may determine a duty to defend by supplementing the facts alleged in the complaint with discovery responses," but remanding to consider whether such treatment was appropriate in the case at bar); Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (noting in *dicta* that when a complaint alleges only intentional conduct when a negligent state of mind could also be averred, there is a duty to defend notwithstanding an "intentional acts" exclusion because the claim is potentially covered); Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 814 (3d Cir. 1994) ("The underlying complaint need not track the policy language for there to be coverage: under the liberal rules of notice pleading, [the underlying] complaint needed only to indicate the type of litigation involved so that the defendant would have fair notice of the claim and its defenses.").

clear potential that the insured would be held liable for covered damages, so the duty to defend was triggered. Similarly, in this case there was clearly the potential that Dadario's injury could be found to arise out of Schindler's operations for Keystone and Swedesford in maintaining the elevator. As discussed in greater detail in plaintiffs' motion for summary judgment, Schindler admitted in its pleadings that it was the elevator contractor, admitted in its answers to interrogatories that it had inspected the elevator days before the accident for leveling problems, and its maintenance person admitted that this inspection should have checked for the leveling problem in the elevator that is alleged to have caused plaintiff's injury. See Exhibit F to Plaintiffs' Motion for Summary Judgment at ¶¶ 5, 11, 14; See Exhibit G to Plaintiffs' Motion for Summary Judgment at Response 9; See Exhibit H to Plaintiffs' Motion for Summary Judgment at 9-13, 18-9, 28-30, 32, 34. There can be no question that the claim involved the potential for liability arising out of Schindler's negligent performance of its inspection and maintenance operations.

More to the point, the jury actually found that Schindler was negligent in its maintenance work. It defies logic for Zurich to argue that the complaint did not allege a potentially covered claim, when the only thing standing between Schindler and a judgment based upon its maintenance work for Keystone and Swedesford was a finding that Dadario's injuries were not proximately caused by Schindler's negligent conduct. In light of the jury's verdict, the underlying suit clearly involved a claim potentially arising out of Schindler's maintenance services.

Plaintiffs do not ask the Court to disregard the allegations of the complaint. Nor do plaintiffs contend that the Complaint is not the starting point for determining the duty to defend. Plaintiffs do contend, however, that in liberally construing the complaint in favor of the insured, the Court is not required to ignore known and undisputed facts which create the actual possibility that the insured

6

would be held liable for a covered claim[2]. In this case, Dadario alleged that Swedesford and

Keystone were negligent in supervising the maintenance and inspection of the elevator. See Exhibit

D to Plaintiffs' Motion for Summary Judgment at ¶¶ 4, 17. Given the undisputed admissions in the

underlying suit that this maintenance and inspection was performed by Schindler, the Court's liberal

construction of the complaint easily allows it to conclude that the complaint is sufficiently broad to

trigger Zurich's duty to defend.

Furthermore, the fact that Dadario did not amend his complaint to plead claims against

Schindler should not be taken as admission by plaintiff that Schindler's conduct did not cause his

harm. Under Pennsylvania law, the filing of Keystone and Swedesford's joinder complaint against

Schindler allowed Dadario to recover from Schindler by operation of law without the need for an

amended complaint. See Pa. R. Civ. Pro. 2255(d) ("The plaintiff shall recover from the an additional

---

[2]Plaintiffs are mindful of Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 908 A.2d 888 (2006), in which the court found error in looking beyond the allegations of the complaint to determine the duty to defend. It is submitted, however, that Kvaerner posed a different scenario than the case at bar. In Kvaerner, the insured was sued in the underlying action for negligently constructing a "coke battery," and the claims against it sounded in contract. *In support of its ensuing coverage action against its insurer*, the insured produced an expert report suggesting that the damage was actually caused by rain water, which it classified as an "accident" (which would be covered under the policy). In other words, the expert report attempted to transform the underlying plaintiff's contract cause of action into an "accidental" negligence cause of action. It was the Superior Court's reliance on this expert report which the Supreme Court found to be in error. Kvaerner is materially different from the case at bar because the outside facts considered by the Superior Court in Kvaerner were facts in dispute and did not form the basis for the underlying plaintiff's claim against the insured. In this case, by contrast, the fact that Schindler was the elevator contractor is both undisputed and does nothing to change the nature and character of Dadario's claims against Keystone and Swedesford. Indeed, the plaintiff ultimately attempted to recover from Schindler and Schindler was actually found negligent. It is submitted that Kvaerner does nothing to prevent the Court from taking notice of undisputed facts which do nothing to change the nature of the plaintiff's claims, which can be reasonably inferred from the underlying plaintiff's complaint, and which actually present the potential that the insured could be held liable for a covered claim.

defendant found liable to the plaintiff alone or jointly with the defendant as though such additional defendant had been joined as a defendant and duly served **and the initial pleading of the plaintiff had averred such liability**."). Indeed, under Pennsylvania law, the averments of the joinder complaint are deemed to be incorporated into Dadario's complaint. Id. Thus, it cannot be said that plaintiff did not also seek to recover for Schindler's negligent conduct. To the contrary, Schindler's elevator maintenance was very much at issue in Dadario's claims. Indeed, the jury actually found Schindler negligent, and could have awarded Dadario damages for that negligence.

For these reasons, and the reasons more fully discussed in plaintiffs' motion for summary judgment, which are incorporated by reference and not restated here for the sake of brevity, the Court should conclude that the underlying suit triggered Zurich's duty to defend. Having reached this point, it then becomes Zurich's burden to establish the applicability of an exclusion absolving it of its duty to defend. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009).

**B.** **The Work Completed Or Put to Intended Use Exclusion Does Not Absolve Zurich of Its Duty to Defend.**

Zurich next attempts to rely upon the "work completed or put to intended use" exclusion to disclaim coverage. This defense fails because the exclusion is ambiguous at best when the "work" at issue is an ongoing and continuous inspection and servicing obligation, which cannot be "completed" until the termination of the contract or put to its "intended use."

When an insurer "seeks to deny coverage on the basis of an exclusion in the policy, **the insurer must bear the burden** of proof to show that the exclusion is **unambiguous under the circumstances** so as to comport with the reasonable expectations of the insured." Bishops, Inc. v.

Penn Nat. Ins., 984 A.2d 982, 991 (Pa. Super. 2009) (emphasis added), citing, Spece v. Erie Ins. Group, 850 A.2d 679, 682 (Pa. Super. 2004); Mehlman, 589 F.3d at 111 ("[T]he insurer... bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does."); Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 606, 735 A.2d 100, 106 (1999).

"As the Supreme Court of Pennsylvania has stated, the terms in an insurance policy 'are ambiguous if they are subject to more than one reasonable interpretation *when applied to a particular set of facts.'* ...Thus, **terms that are straightforward in one context may be ambiguous in the next.**" Transportation Ins. Co. v. Pa. Mfrs. Assoc. Ins. Co., 346 Fed. Appx. 862, 867 (3d Cir. 2009), quoting, Madison Constr., 557 Pa. at 606, 735 A.2d at 106 (bold added, internal citations omitted). Whether an exclusion is ambiguous "is **not a question to be resolved in a vacuum,**" but is to be decided based upon the particular facts of the claim. Madison Constr., 557 Pa. at 606, 735 A.2d at 106 (emphasis added). "[E]xclusions are always strictly construed against the insurer and in favor of the insured." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 207 (3d Cir. 2001). With these standards in mind, it is clear that the "work completed or put to intended use" exclusion is either inapplicable by its terms, or ambiguous at best.

As a preliminary matter, Zurich concedes that the interpretation of this exclusion is a matter of first impression under Pennsylvania law. See Zurich's Brief at 12. Consequently, it is for this Court to determine the proper construction of the exclusion in light of the dictates of Pennsylvania law. Although Zurich cites non-binding, out-of-state decisions in support of its position, this Court

9

is not bound by those decisions, nor is there any reason to believe that the Pennsylvania Supreme

Court would adopt the reasoning of those cases.

Turning then to this novel issue under Pennsylvania law, the exclusion applies in two

scenarios, which will be addressed *in seriatim*. First, the exclusion applies,

> When all "work" on the project (other than service, maintenance or repairs) to be
> performed for you by the "contractor" at the site of the covered operations has been
> completed.

See Exhibit K to Plaintiffs' Motion for Summary Judgment at OCPLP Form, Section I, ¶ (2)(c)(1).

Zurich contends that this section of the exclusion applies because Schindler was not performing any

work on the elevator at the time of the accident. Perhaps Zurich's argument would be correct if

Schindler's contract was for the performance of a discrete act, such as the installation of an elevator.

In the context of this claim, however, this provision of the exclusion is ambiguous.

Under the terms of the Continuing Service Contract, Schindler's obligation was to perform

"continuing" service and maintenance on the elevator in question during the contract term, which

ran from August 30, 2005 to August 29, 2010. See Exhibit C to Plaintiffs' Motion for Summary

Judgment at 1. Thus, on the face of the of the contract, Schindler's work was not "completed" on

August 29, 2006 when Dadario was injured. Relying upon out-of-state, non-binding precedent,

Zurich argues that the exclusion was intended to consider each specific visit to the property for

maintenance and inspection a "discrete insurable event," and that the coverage obligation ended

when each visit was concluded. Nowhere is this requirement stated or implied in the exclusion. To

the contrary, the exclusion unambiguously states that it applies when "**all** 'work' on **the project**" is

completed. Although the term "project" is undefined, there can be little question that "project" is

synonymous with the obligations undertaken in the CSC. Plainly, "all" of Schindler's work under

the CSC could not be completed until the CSC expired. This is particularly true where, as is the case here, the CSC contained a requirement of ongoing and continued inspection of the elevators to identify the very hazard that is alleged to have caused Dadario's fall. See Exhibit C to Plaintiffs' Motion for Summary Judgment at Exhibit A; see Exhibit D to Plaintiffs' Motion for Summary Judgment at 9-13, 18-19, 34. If Zurich wished to define each service visit as a discrete insurable event, and exclude coverage once each particular visit was concluded, it should have stated this requirement in its exclusion. Zurich cannot now attempt to rewrite its exclusion to clarify that when it meant "all work on the project," it actually meant "the work performed on a particular visit to the premises."

There can be little question that the "work completed" portion of the exclusion is ambiguous, at best, in the context of a continuing service agreement. Indeed, it is submitted that the ambiguity arises from the fact that the work completed exclusion did not contemplate and was not intended to apply to an ongoing service contract. Rather, the exclusion was intended to apply to specific construction projects in which the contractor supplied or installed specific physical components for the completion of the project. For example, the exclusion contemplates the situation in which Schindler is contracted to install an elevator. In such cases, the time at which the work is "completed" is clear - when the elevator is installed. Indeed, this is evidenced by the fact that the exclusion considers the work to be "completed" even if "service, maintenance or repairs" remain to be performed. This is further evidenced by the fact that the policy defines "work" as including "parts, materials or equipment furnished in connection with the operations," but makes no reference to service, inspection or maintenance. See Exhibit K to Plaintiffs' Motion for Summary Judgment at OCPLP Form, Section V, ¶ (16). The reason the definition of "work" is entirely silent with

respect to service and maintenance obligations is that the exclusion was never intended to apply to continuing service agreements.

It is apparent, therefore, that the agreement in question, which addressed only ongoing maintenance and service, was not contemplated by the exclusion. Indeed, if the exclusion were to apply to a continuing service agreement, the coverage provided by the policy would be completely illusory. Since the contract excludes harm occurring after the completion of the "work," and "service, maintenance and repairs" are apparently excluded from the definition of "work," any work performed by Schindler under the CSC (all of which is "service, maintenance or repairs") would be excluded - even if the injury occurred while Zurich was performing its service obligations under the CSC. In other words, although Zurich issued a policy and charged a premium to cover the operations performed by Schindler under the CSC, it now seeks an interpretation of its policy which would never provide coverage under any circumstances. Such an interpretation clearly is not in accord with the reasonable expectations of the parties.

Since the "work completed" portion of the exclusion is both ambiguous in the context of the claim and would render the coverage provided illusory, Zurich next relies on the "intended use" portion of the exclusion. This section of the exclusion applies,

> When that portion of the "contractor's" "work", out of which the injury or damage arises, has been put to its intended use by any person or organization, other than another contractor or subcontractor working directly or indirectly for the "contractor" or as part of the same project.

See Exhibit K to Plaintiffs' Motion for Summary Judgment at OCPLP Form, Section I, ¶ (2)(c)(2). Zurich argues that because the elevator was being used for its intended purpose as an elevator at the time of the accident, the exclusion applies to bar coverage.

12

The error in Zurich's argument is that it assumes Schindler's "work" under the CSC was the installation of the elevator or specific components of the elevator. To the contrary, Schindler's "work" was the inspection and servicing of the elevator in question. While there can be no question that when a contractor affirmatively installs an elevator or a component to an elevator, its work is put to its intended used when the elevator is used as an elevator, an obligation to *inspect* the elevator is not work that can ever be put to its intended use. Keystone and Swedesford's potential liability was not premised (or, at least, was not premised in whole) upon the failure of any particular component installed by Schindler to operate as intended. Rather liability was predicated, in part, on the failure to discover and warn against the leveling problem of the elevator. See Exhibit D to Plaintiffs' Motion for Summary Judgment at ¶¶ 9(d-f), 20(d-f). In other words, the harm was alleged to have arisen out of an omission in the performance of the CSC, and not the failure of any affirmatively supplied components or repairs to operate as intended. Since the relevant "work" in this case was the failure inspect the elevator, and an inspection cannot be put to any intended use, this provision of the exclusion also fails absolve Zurich of its duty to defend. This is particularly true when the inspection obligation is continuing. It is difficult, if not impossible, to imagine a scenario when a continuing inspection obligation could be put to any particular use. At best, the exclusion is ambiguous and must be construed against Zurich[3].

Similar to the "work completed" portion of the exclusion, it is submitted that the ambiguity of the "intended use" portion of the exclusion also derives from the fact that the exclusion simply

_____

[3]Stated differently, the exclusion applies when the "work" is put to its intended use, and not when the object of the "work" is put to its intended use. Thus, when the contractor is hired to construct an elevator, its "work" is the elevator, which can be put to use as an elevator. On the other hand, where the "work" is an inspection, the exclusion does not apply because an inspection is not capable of being put to an intended use.

was not intended to apply to a service and maintenance contract. It was intended to apply to a contract for the affirmative installation of a particular piece of equipment or construction of a physical structure. As discussed above, this is evidenced by the fact that the definition of "work" is silent as to maintenance and inspections. Indeed, the "intended use" and "work completed" clauses in the exclusion are simply two different means of identifying when the contractor's work has been completed, and the contractor's work on the project has ended. This can occur when the work on the entire project is "completed" or when a particular portion of the work (although not necessarily the entire project) is sufficiently complete to be put to its intended use. The reason that attempting to apply these exclusions to the service contract at issue feels like placing a square peg in a round hole is that the exclusion simply was not written for or intended to apply to the continuing service contract at issue.

In sum, the "work completed" portion of the exclusion does not apply because Schindler had not completed "all" of its work under the ongoing CSC at the time of the incident, and the "intended use" portion of the exclusion does not apply because an "inspection" cannot be put an intended use - particularly an ongoing inspection. At best, the exclusion is ambiguous under the circumstances of this case where the operations to be performed are a continuing service contract which cannot be "completed" or "put to its intended use," and the source of this ambiguity derives from the fact that the exclusion simply was not intended to apply to continuing service agreements[4]. For these reasons, the "Work Completed Or Put to Intended Use" exclusion must be strictly construed against Zurich

---

[4]It bears emphasis that plaintiffs do not contend that the exclusion is ambiguous in all contexts and for all purposes. Plaintiffs contend only that the exclusion is ambiguous in the context of this claim, when the conduct insured and giving rise to the harm is a continuing obligation to inspect for and identify defects in the elevator.

and does not absolve Zurich of its duty to defend.

## C. The Your Acts or Omissions Exclusion Does Not Absolve Zurich of Its Duty to Defend.

Zurich finally relies on the "Your Acts or Omissions" exclusion. This argument fails because the Dadario complaint's allegation that Swedesford and Keystone were negligent in their supervision of the maintenance of the elevator was sufficient to subject Keystone and Swedesford to vicarious liability for Schindler's conduct in the performance of the CSC, and also brings the claim within the exception to the exclusion for Swedesford and Keystone's general supervision of Schindler's work.

The "Your Acts or Omissions" exclusion excludes coverage for,

> "Bodily injury" or "property damage" arising out of your, or your "employees'", acts or omissions other than the general supervision of "work" performed for you by the "contractor."

See Exhibit K to Plaintiffs' Motion for Summary Judgment at OCPLP Form, Section I, ¶ (2)(d). Zurich argues that this exclusion applies because the Dadario complaint alleged only Keystone and Swedesford's negligence. This argument is unavailing for three reasons.

First, the Dadario complaint specifically alleged that Keystone and Swedesford were negligent in their supervision of the elevator maintenance. See Exhibit D to Plaintiffs' Motion for Summary Judgment at ¶¶ 4, 17. Given the undisputed facts that Dadario was the elevator maintenance contractor which was supposed to have inspected the elevator for the very condition that caused plaintiff's fall, the Dadario complaint easily falls within the exception to the exclusion for Keystone and Swedesford's "general supervision of the 'work' performed for [Keystone and Swedesford] by [Schindler]."

Second, even if the allegations did not fall within the "general supervision" exception to the

exclusion, Zurich incorrectly assumes that the exclusion applies to all forms of liability that could be potentially imposed on Keystone and Swedesford. The terms of the exclusion are not so broad, however. While plaintiffs recognize that the exclusion would bar liability premised on Swedesford and Keystone's direct, active negligence (other than for general supervision), the exclusion does not bar claims for secondary (i.e. "passive" or "vicarious") liability imposed on them as a result of Schindler's conduct. See W.G. Yates & Sons Const. Co. v. Zurich American Ins. Co., 2008 WL 161921 at *9 n. 19 (S.D. Ala. Jan. 8, 2008) ("OCP policies routinely are confined to vicarious liability, and do not extend coverage to the named insured for the named insured's own acts or omissions except in its role of generally supervising the subcontractor.").

If this were not obvious from the text of the exclusion (which makes no reference to vicarious liability), it is obvious from the application of the exclusion if it were construed to include vicarious liability. If the exclusion encompassed even vicarious liability, there would only be coverage for a claim based on negligent supervision. There would be no coverage for an injury occurring while the contractor was actually in performance of the work even though the property owner used all reasonable care in supervising that work. This would be true notwithstanding the fact that the landlord would still be liable for the harm caused by the defective condition on the property created by its contractor. Clearly, this was not the intent of the exclusion. The exclusion only applies to claims premised on the insured's active liability, but does not exclude coverage for secondary/vicarious liability for the contractor's negligence.

Passive or secondary liability generally exists when one is held liable for its failure to discover and remedy the negligent conduct of another. See Builders Supply Co. v. McCabe, 366 Pa. 322, 328, 77 A.2d 368, 371 (1951) ("[S]econdary as distinguished from primary liability rests upon

16

a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible."). As the property owner and property manager, there can be no dispute that Keystone and Swedesford were ultimately responsible to maintain the elevators in a safe condition; however, this obligation was delegated to Schindler through the continuing service contract. Thus, to the extent Keystone and Swedesford's liability (or potential liability) arose because of Schindler's failure to perform the inspection and maintenance obligations assigned to it, their liability is secondary. In other words, it is not premised upon Keystone and Swedesford's acts or omissions, but rather, Schindler's acts or omissions for which Keystone and Swedesford are ultimately liable as the owner and manager of the property[5].

The allegations in the Dadario complaint that Keystone and Swedesford were either directly negligent in the inspection and maintenance of the elevator, or were "responsible for" the maintenance and inspection, including supervision, are sufficiently broad to hold Keystone and Swedesford liable for Schindler's failure to perform its obligations under the CSC. See Exhibit D to Plaintiffs' Motion for Summary Judgment at ¶¶ 4, 17[6]. These are allegations of secondary/passive negligence that do not fall within the exclusion. While plaintiffs recognize that the Dadario

---

[5]Stated differently, as between Dadario and Keystone/Swedesford, it would be no defense to allege that elevator maintenance was contracted to Schindler. Keystone and Swedesford would still be liable to Dadario for the condition of the elevators as the owner/property manager, notwithstanding the fact that Schindler was contracted to perform this work.

[6]"At all times material hereto, defendant [Swedesford/Keystone] **had under its care**, supervision control, maintenance **and/or was responsible for the care**, maintenance and condition of said property..."

complaint was broad enough to also include potential liability based upon Keystone/Swedesford's active negligence (i.e. if Swedesford/Keystone were aware of the condition of the elevators and failed to remedy it, or created the condition of the elevators), this does not absolve Zurich of its duty to defend. The duty to defend remains until all potentially covered claims are eliminated. Gen. Acc. Ins. Co. v. Allen, 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997). Since Keystone/Swedesford's potential liability to Dadario included their secondary liability for Schindler's failure to perform its obligations under the CSC, the "Your Acts or Omissions" exclusion did not absolve Zurich of its duty to defend.

Third, as discussed above, upon the filing of the joinder complaint, Dadario obtained the right to recover from Schindler by operation of law as if Schindler had been originally named in the complaint. See Pa. R. Civ. Pro. 2255(d). Thus, there can be no question that Dadario's claim sought to recover for conduct beyond the acts and omissions of Keystone and Swedesford themselves.

In sum, the "Your Acts or Omissions" exclusion does not absolve Zurich of its duty to defend for three reasons. First, the underlying suit involved potential liability for Keystone and Swedesford's negligence in their general supervision of Schindler's work under the CSC. Second, the exclusion does not apply to secondary liability imposed on Keystone and Swedesford for Schindler's acts or omissions, which was also at issue in the underlying suit. Third, Dadario could actually recover for Schindler's negligence through operation of law upon the filing of the joinder complaint. Since the exclusion did not encompass all potential grounds for Keystone and Swedesford's liability, it cannot be used to avoid the duty to defend.

### E.    Breach of the Duty of Good Faith and Fair Dealing.

The duty of good faith and fair dealing is implied in every contract. Zurich argues that if it

did not breach the insurance policy by refusing to defend, then it has not breached the duty of good faith and fair dealing. Plaintiffs note only the contrary proposition that if Zurich wrongfully failed to provide a defense, it can be liable for breaching the duty of good faith and fair dealing. Consequently, if Zurich's motion for summary judgment on the coverage aspects of the claim is denied, its motion should also be denied as to the good faith and fair dealing claim.

Additionally, Zurich argues that because plaintiffs accidentally tendered the contract for the neighboring property, they cannot recover on their good faith and fair dealing claim. Zurich cites no case law for this proposition. Indeed, had Zurich not ignored two specific tender letters and forced plaintiffs to file this suit (still without an acknowledgment or response to the tender), all in violation of the Pennsylvania Unfair Insurance Practices Act[7], Zurich could have corrected any misconception by the plaintiffs. See Exhibit A, November 13, 2009 Tender; Exhibit B, December 10, 2009 Tender.

To the extent Zurich argues that plaintiffs have continued to pursue their claim for coverage under the Commercial General Liability insurance policy after the contractual error was brought to their attention, this is not true. Although these provisions of the complaint were not formally withdrawn (and Zurich never requested that they be withdrawn), it was understood since shortly after the filing of defendant's answer that plaintiffs were not pursuing claims under the CGL policy. This is evidenced by plaintiffs' Scheduling Information Report submitted to the Court on October 26, 2010. See Exhibit C, Scheduling Information Report. Exhibit A to that report outlines plaintiffs'

---

[7]See 40 P.S. § 1171.5(a)(10)(ii) ("Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies"); 40 P.S. § 1171.5(a)(10)(xiv) ("Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.").

claims and refers only to the OCPL policy. This is further evidenced by Zurich's denial of plaintiffs' tender (finally provided November 17, 2010 - one year after the original tender and four months after the filing of suit), in which Zurich confirms its understanding that "Swedesford and Keystone no longer contend they are entitled to coverage under the Zurich CGL coverage grant." See Exhibit D, Denial Letter.

For these reasons, if defendant's motion for summary judgment is denied as to the coverage aspects of the case, it should also be denied as to the breach of the duty of good faith and fair dealing.

## IV.    CONCLUSIONS

Zurich's motion for summary judgment should be denied (and plaintiffs' motion should be granted). In order to trigger Zurich's duty to defend, the underlying suit need only have been one potentially "arising out of" Schindler's elevator maintenance and inspection services performed for Keystone and Swedesford. In assessing the duty to defend, the court need not disregard undisputed facts which created the actual possibility that the insured could be held liable for a covered claim. Since (1) the Dadario complaint alleged that Keystone and Swedesford were responsible for the "supervision" of the elevator maintenance, (2) Schindler admitted that it was the elevator contractor, admitted that it inspected the elevator days before the incident, and admitted that its inspection should have checked for the leveling problem that caused plaintiff's fall, (3) the jury actually found that Schindler was negligent in maintaining the elevator, and (4) Dadario was permitted recover for Schindler's negligence by operation of law upon the filing of the joinder complaint, the underlying suit clearly alleged a potentially covered claim triggering Zurich's duty to defend.

Zurich's reliance upon the "work completed or put to intended use" exclusion is unavailing because the exclusion is ambiguous at best when the "work" at issue is an ongoing and continuous

inspection and servicing obligation, which cannot be "completed" until the expiration of the contract, and which cannot be put to its "intended use." Indeed, this exclusion was not even intended to apply to continuing service agreements. Zurich's reliance on its "your acts or omissions" exclusion is equally misplaced because the underlying suit involved potential liability falling outside the terms of the exclusion. Specifically, Keystone and Swedesford's liability for its supervision of Schindler's work and its secondary liability for Schindler's failure to perform the work delegated to it, were also at issue and not excluded from coverage. Consequently, neither of the cited exclusions absolved Zurich of its duty to defend.

For these reasons, and those more fully set out above and in plaintiffs' motion for summary judgment, Zurich's motion for summary judgment should be denied and plaintiffs' motion for summary judgment should be granted.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY:  /s Nicholas A. Cummins (nac7591)
     WARREN F. SPERLING, ESQUIRE
     IDENTIFICATION NO. 36676
     sperling@bbs-law.com
     NICHOLAS A. CUMMINS, ESQUIRE
     IDENTIFICATION NO. 203238
     cummins@bbs-law.com
     1601 Market Street, 16th Floor
     Philadelphia, PA 19103
     215-665-3400
     Attorneys for Plaintiffs

Date:  April 11, 2011

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIREMAN'S FUND INSURANCE COMPANY   :

580 & 530 SWEDESFORD ASSOCIATES, L.P.   :

KEYSTONE PROPERTY GROUP, GP, LLC   :

       Plaintiffs   :

  :    NO. 2:10-CV-04293-CMR

       v.   :

ZURICH-AMERICAN INSURANCE COMPANY :
      Defendant   :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing response to motion for summary judgment was served on all interested parties on this date by electronic filing with the court or regular mail, postage pre-paid, addressed as follows:

Marc J. Syken, Esquire
Bodell, Bove', Grace & Van Horn, P.C.
One Penn Square West, 6th Floor
30 South 15th Street
Philadelphia, PA 19102

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY:  /s Nicholas A. Cummins (nac7591)
     WARREN F. SPERLING, ESQUIRE
     IDENTIFICATION NO. 36676
     sperling@bbs-law.com
     NICHOLAS A. CUMMINS, ESQUIRE
     IDENTIFICATION NO. 203238
     cummins@bbs-law.com
     1601 Market Street, 16th Floor
     Philadelphia, PA 19103
     215-665-3400
     Attorneys for Plaintiffs

Date:  April 11, 2011

EXHIBIT "A"

BENNETT, BRICKLIN & SALTZBURG LLC

ATTORNEYS AT LAW
1601 MARKET STREET
16TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-2393
(215) 561-4300
FAX: (215) 561-6661
WEBSITE: www.bbs-law.com

BLUE BELL OFFICE
FIVE VALLEY SQUARE
SUITE 200
512 EAST TOWNSHIP LINE ROAD
BLUE BELL, PA 19422
(267) 654-1100
FAX: (267) 654-1122

NEW JERSEY OFFICE
EXECUTIVE MEWS
SUITE H-43
1930 EAST MARLTON PIKE
CHERRY HILL, NJ 08003
(856) 751-5285
FAX: (856) 751-5281

CENTRAL PENNSYLVANIA OFFICE
222 E. ORANGE STREET
LANCASTER, PA 17602
(717) 393-4400
FAX: (717) 393-4322

WRITER'S DIRECT DIAL: (215) 665-3307
WRITER'S EMAIL: fishbein@bbs-law.com

November 13, 2009

VIA EMAIL - kathleenfuell@zurichNA.com

Attn.: Ms. Kathleen Fuell
Zurich Insurance Company N.A.
P.O. Box 66946
Chicago, IL   60666

> Re:   Fireman's Fund Insurance Company
> vs.   Zurich Insurance Company
> Fireman's Fund Insured: Keystone Property Group
> and 580 and 530 Swedesford Associates, L.P.
> Date of Loss: August 29, 2006
> Our File No. 100587

Dear Ms. Fuell:

Pursuant to a letter of September 10, 2009, from counsel for Schindler Elevator Corporation to Catherine Straggas, Esquire, counsel retained by Fireman's Fund to represent the interests of 580 and 530 Swedesford Associates, L.P. and Keystone Property Group, a copy of which I am enclosing, I am writing to you to demand that Zurich Insurance Company provide indemnity and a defense to the Fireman's Fund's insureds pursuant to a policy purchased by Schindler and issued by Zurich, naming Keystone Property Group and 580 and 530 Swedesford Associates, L.P. as insureds

By way of background, Gaetano Dadario ("Dadario") filed a lawsuit in the Court of Common Pleas of Chester County, Pennsylvania, asserting a claim for personal injuries and naming Keystone Property Group ("KPG") and 580 and 530 Swedesford Associates, L.P. ("580") as defendants along with General Electric Company. I am enclosing a copy of that complaint for your reference. 580 and Keystone then joined Schindler Elevator Corporation ("Schindler") as an additional defendant, a copy of the joinder complaint is also attached for your reference. Among the allegations of the joinder complaint are those asserting that Schindler has failed to defend, indemnify and hold harmless 580 and Keystone and further has failed to tender the defense of 580 and Keystone to Schindler's insurance carrier.

Schindler has filed a motion for partial summary judgment and in support thereof, has, *inter alia*, filed a reply to the response of Keystone and 580, a true and correct copy of which is also attached. More particularly, I call your attention to the second complete paragraph of page 3 of the reply. It asserts that the addendum to the contract between Keystone and Schindler required Schindler to name all required parties as insureds on an Owners and Contractors Protective Policy ("OCPL" policy). Schindler asserts that it complied with the terms of its contract by purchasing an OCPL policy with Zurich on behalf of Keystone and 580, and that Keystone and 580 are the named insureds under that policy.

Assuming that Schindler's position is correct, on behalf of Fireman's Fund Insurance Company, I herewith request that you provide me, as its counsel, with a complete copy of the policy naming 580 and Keystone as insureds and also agree to provide 580 and Keystone with a defense and indemnity as to the claims being asserted against them by Mr. Dadario.

As this matter is scheduled for trial shortly, I would appreciate hearing from you as soon as possible.

Very truly yours,

Joel Paul Fishbein

JPF/mee - Enclosure

# EXHIBIT "B"

**BENNETT, BRICKLIN & SALTZBURG LLC**

ATTORNEYS AT LAW

1601 MARKET STREET

16TH FLOOR

PHILADELPHIA, PENNSYLVANIA 19103-2393

(215) 561-4300

FAX: (215) 561-6661

WEBSITE: www.bbs-law.com

**BLUE BELL OFFICE**
FIVE VALLEY SQUARE
SUITE 200
512 EAST TOWNSHIP LINE ROAD
BLUE BELL, PA 19422
(267) 654-1100
FAX: (267) 654-1122

**NEW JERSEY OFFICE**
EXECUTIVE MEWS
SUITE H-43
1930 EAST MARLTON PIKE
CHERRY HILL, NJ 08003
(856) 751-5285
FAX: (856) 751-5281

**CENTRAL PENNSYLVANIA OFFICE**
222 E. ORANGE STREET
LANCASTER, PA 17602
(717) 393-4400
FAX: (717) 393-4322

WRITER'S DIRECT DIAL: (215) 665-3307
WRITER'S EMAIL: fishbein@bbs-law.com

December 10, 2009

VIA EMAIL - kathleenfuell@zurichNA.com

Attn.: Ms. Kathleen Fuell
Zurich Insurance Company N.A.
P.O. Box 66946
Chicago, IL 60666

Re: Fireman's Fund Insurance Company
vs. Zurich Insurance Company
Fireman's Fund Insured: Keystone Property Group
and 580 and 530 Swedesford Associates, L.P.
Date of Loss: August 29, 2006
Our File No. 100587

Dear Ms. Fuell:

I have not heard anything from you in response to my letter of November 13, 2009, a copy of which I am enclosing for your reference. I have been advised that the underlying case of Dadario v. Keystone Property Group and Schindler will be list for trial in the Court of Common Pleas of Chester County in January or February of 2010. Therefore, it is most important that you respond promptly to our demand that Zurich Insurance Company provide a defense to 580 and 530 Swedesford Associates, L.P. and Keystone Property Group. Should Zurich not fulfill its contractual obligations under the policy, it is the intention of 580 and Keystone to pursue a claim against Zurich for any amounts they are called upon to pay to Dadario as well as for counsel fees and costs.

Moreover, it is Zurich's legal obligation to provide to its insureds a complete copy of the policy which Zurich had issued to them and to explain, if Zurich can, the reasons why coverage is not being extended to its insureds.

December 10, 2009
Page 2

I await an immediate response from you.

Very truly yours,

Joel Paul Fishbein

JPF/jmk - Enclosure

# EXHIBIT "C"

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY | : |
| | : |
| 580 & 530 SWEDESFORD ASSOCIATES, L.P. | : |
| | : |
| KEYSTONE PROPERTY GROUP, GP, LLC | : |
| | : |
| Plaintiffs | : |
| | :    NO. 2:10-CV-04293-CMR |
| v. | : |
| | : |
| ZURICH-AMERICAN INSURANCE COMPANY | : |
| Defendant | : |

## PLAINTIFFS' SCHEDULING INFORMATION REPORT

### I.  PARTIES AND ATTORNEYS

**Plaintiffs' Counsel**
Bennett, Bricklin & Saltzburg LLC
Warren F. Sperling, Esquire
sperling@bbs-law.com
Nicholas A. Cummins, Esquire
cummins@bbs-law.com
1601 Market Street, 16th Floor
Philadelphia, PA 19103
215-665-3400
215-561-6661 (fax)

**Defense Counsel**
BODELL, BOVE, GRACE & VAN HORN, P.C.
Louis A. Bove, Esquire
lbove@bodellbove.com
Marc J. Syken
msyken@bodellbove.com
One Penn Square West, 6th Floor
30 S. 15th Street
Philadelphia, PA 19102

### II.  CASE DETAILS

This matter was removed from the Philadelphia Court of Common Pleas on the basis of diversity jurisdiction, 28 U.S.C.A. § 1332.

Count I seeks a declaration that plaintiffs are entitled to insurance coverage and a defense against the underlying lawsuit, Dadario v. 580 and 530 Swedesford Associates, L.P. et al., from Zurich under insurance policies issued by Zurich to Schindler Elevator Company.

Count II alleges breach of contract for failing to provide insurance coverage.

Count III alleges breach of the duty of good faith and fair dealing in failing to provide the coverage requested, or respond to multiple written and verbal defense tenders.

## III.   DISCOVERY

Have you complied with the duty of self-executing disclosure under Federal Rule of Civil Procedure 26(a)? **Yes.**

Have you filed a discovery plan pursuant to Federal Rule of Civil Procedure 26(f)? **Yes.**

Discovery completed? **Written documents only.** If not, when? **February 28, 2011**

If you contend that discovery should exceed four months after all defendants have filed an appearance, please state reasons:

**Although the parties anticipate minimal discovery in this matter, it is requested that discovery remain open until February 28, 2011 to permit the parties to assess the testimony given in the trial of the underlying matter, and determine whether further discovery is warranted. The underlying suit is set for a date-certain trial date of January 24, 2011.**

Ready for trial by: **June 30, 2011**

Is a settlement conference likely to be helpful? **Unknown at this time.**

Do you expect to file a dispositive motion? **Yes.**

If so, by what date? **May 15, 2011, if not earlier.**

## IV.   TRIAL

Time to present your case: **2 to 3 days depending on issues to be presented.**

Estimated time for entire trial: **4 to 5 days**.

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: _____
WARREN F. SPERLING, ESQUIRE
NICHOLAS A. CUMMINS, ESQUIRE
Attorneys for Plaintiffs, Fireman's Fund Insurance
Company, 580 & 530 Swedesford Associates, L.P., and
Keystone Property Group, GP, LLC

Date: 10/25/10

Plaintiffs 580 & 530 Swedesford Associates, L.P. and Keystone Properties Group GP, LLC are the owners and property managers, respectively, of an office building located at 530 East Swedesford Road in Wayne, Pennsylvania. Gaetano Dadario, the plaintiff in the underlying suit, was a security guard who worked the night shift for a tenant in the subject building. In the underlying suit, Mr. Dadario claims to have tripped and fallen while attempting to enter an elevator when the elevator floor did not properly align with the office building floor. Swedesford had entered into a Continuing Service Contract with Schindler Elevator Company in which Schindler was to inspect and maintain the elevators. Schindler had last inspected the elevators five days before Mr. Dadario's accident. Mr. Dadario filed suit against Swedesford and Keystone Properties group (among others), who in turn joined Schindler as a defendant.

Pursuant to its contract with Swedesford, Schindler obtained an Owners and Contractors Protective Liability (OCPL) insurance policy from Zurich which identified Swedesford and Keystone as named insureds. The policy provides coverage to Swedesford and Keystone for bodily injury arising out "Operations performed for [Keystone/Swedesford] by [Schindler] at the location specified in the Declarations; or (b) [Keystone/Swedesford's] acts or omissions in connection with the general supervision of such operations." Although Dadario's claims arise out of Schindler's negligent elevator maintenance performed at 530 Swedesford Road, Zurich has refused to defend Swedesford and Keystone against the Dadario lawsuit. Zurich further failed to acknowledge or respond to two written tender letters dated November 13 and December 10, 2009, and also failed to return telephone calls from counsel. As a result, Swedesford and Keystone have been defended by Fireman's Fund Insurance Company under a Commercial General Liability insurance policy issued to them by Fireman's Fund. The underlying suit is scheduled for trial on January 24, 2011.

# EXHIBIT "D"

# BODELL, BOVE, GRACE & VAN HORN

### A PROFESSIONAL CORPORATION

| 1913 GREENTREE ROAD<br>SUITE A<br>CHERRY HILL, NJ 08034<br>(856) 414-1441<br>FAX: (856) 414-9119<br>MANAGING PARTNER: LOUIS A. BOVÉ | ATTORNEYS AT LAW<br>ONE PENN SQUARE WEST<br>SIXTH FLOOR<br>30 SOUTH 15TH STREET<br>PHILADELPHIA, PA 19102 | 1225 NORTH KING STREET<br>SUITE 1000<br>P.O. BOX 397<br>WILMINGTON, DE 19899<br>(302)655-6749<br>FAX: (302)655-6827 |
|---|---|---|

LOUIS A. BOVÉ
Direct dial: (215) 864-6602
Direct E-mail: lbove@bodellbove.com

(215) 864-6600
FAX (215) 864-6610
http://www.bodellbove.com
e-mail: lawyers@bodellbove.com

MARC J. SYKEN
Direct dial: (215) 864-0223
Direct E-mail:
msyken@bodellbove.com

November 17, 2010

**Via Electronic and Regular Mail**

580 & 530 Swedesford Associates
Keystone Property Group c/o
Nicholas A. Cummins, Esquire
Bennett, Bricklin & Saltzburg LLLC
1601 Market Street, 16th Floor
Philadelphia, PA 19103

      Re:    Fireman's Fund Insurance Co., et al v. Zurich American Insurance Co.
               <u>USDC for the Eastern District of PA, No. 10-4293</u>
               Dadario v. 580 and 530 Swedesford Associates, et al,
               CCP Chester County, No. 08-00924

Dear Mr. Cummins:

      We write on behalf of Zurich American Insurance Company ("Zurich") to address the claim for coverage being advanced by 580 & 530 Swedesford Associates ("Swedesford") and Keystone Property Group ("Keystone") for the litigation styled *Dadario v. 580 and 530 Swedesford Associates, et al*, CCP Chester County, No. 08-00924 (the "*Dadario* litigation"). Per the allegations in the Declaratory Judgment Complaint pending at USDC for the Eastern District of PA, No. 10-4293, Swedesford and Keystone sought coverage from under Zurich under Commercial General Liability Policy GLO 6445435, which includes a commercial general liability (CGL) coverage grant, and is endorsed to include an Owners and Contractors Protective Liability grant at OCP 4905576 (the "OCP" coverage grant).

      Coverage was claimed pursuant to a Continuing Service Contract with Schindler Elevator Corporation ("Schindler"). However, that agreement was subject to an Addendum, which was not attached to the Declaratory Judgment Complaint filed by Swedesford and Keystone. The operative contract with the Addendum was in fact appended to Zurich's Answer, and Zurich's understanding is that Swedesford and Keystone now concede this is the controlling contract. Further, it is also Zurich's understanding that Swedesford and Keystone no longer contend they are entitled to coverage under the

Zurich CGL coverage grant. In light of these recent clarifications, we write to briefly to address the claim for coverage of Swedesford and Keystone under the Zurich OCP coverage grant.

The OCP form provides the following grant of coverage.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III-Limits of Insurance; and
(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" and arises out of:

(a) Operations performed for you by the "contractor" at the location specified in the Declarations; or
(b) Your acts or omissions in connection with the general supervision of such operations; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Section I., 1.,"Insuring Agreement."

This grant is subject to various limitations, including but not limited to the following exclusions:

This insurance does not apply to:

c. Work Completed Or Put To Intended Use

"Bodily injury" or "property damage" which occurs after the earlier of the following times:

(1) When all "work" on the project (other than service, maintenance or repairs) to be performed for you by the "contractor"[1] at the site of the covered operations has been completed; or

(2) When the portion of the "contractor's" "work", out of which the injury or damage arises, has been put to its intended use by any person or organization, other than another contractor or subcontractor working directly or indirectly for the "contractor" or as part of the same project.

\*\*\*

d. Acts Or Omissions By You And Your Contractor

"Bodily injury" or "property damage" arising out of your,[2] or your "employees'", acts or omissions other than general supervision of "work" performed for you by the "contractor".

Section I., 2.(c), (d), "Exclusions."

The averments in the underlying Complaint contain no allegations of negligence against Schindler. Further, the Joinder Complaint filed by Swedesford and Keystone does not aver Schindler was performing any work at the accident location when the accident occurred. In fact, the Joinder Complaint states that Schindler technicians were working on the elevators located at 530 East Swedesford Road "in the days preceding" the accident; not on the day of the accident. The documents that have been provided in connection with the self-executing disclosures confirm that Schindler was not performing any work on the elevators at 530 East Swedesford Road at the time of the accident giving rise to the *Dadario* litigation. Thus, Zurich must deny the request for coverage of Swedesford and Keystone under the OCP Policy.

---

[1]The contractor on the Declarations is identified as "Schindler Elevator Corporation."

[2]The preamble to the coverage form states "[t]he terms "you" and "your" refer to the Named Insured shown in the declarations, "580 & 530 Swedesofrd Associates, L.P. c/o Keystone Properties Group, Inc."

If there is further information you would like Zurich to consider, please identify the same, and our office will forward that information to Zurich.

Please be advised that nothing contained herein constitutes a waiver of any of Zurich's rights and/or defenses under any Zurich Policy and that Zurich continues to reserve all of its rights and defenses under the Zurich Policy(ies) and applicable law, whether or not stated herein. This letter is not intended, nor should it be construed as an exhaustive listing of all policy terms and provisions applicable herein.

Zurich reserves the right to identify additional policy terms in the future and to raise additional bases for its stated position. Any failure of Zurich in this or any other communication to expressly identify any basis for its position is not intended to be, nor should it be viewed as, a waiver of any such other defenses or bases, whether known or unknown. Zurich reserves all of its rights under the terms, conditions, definitions, exclusions, limitation of liability and all other provisions of the Zurich Policy(ies), all of which are incorporated by reference herein.

Thank you for your attention to this matter.

Very truly yours,

BODELL, BOVE, GRACE & VAN HORN

Louis A. Bové
Marc J. Syken