# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIREMAN'S FUND INSURANCE
COMPANY, 580 & 530 SWEDESFORD
ASSOCIATES, LP, and KEYSTONE
PROPERTY GROUP, GP, LLC,

        *Plaintiffs,*

    vs.

ZURICH AMERICAN INSURANCE
COMPANY,

        *Defendant.*

CIVIL ACTION
NO. 2:10-CV-04293-CMR

[This Document has been
Electronically Filed]

## ORDER

AND NOW, this      day of          , 2011, upon the Motion for Partial

Summary Judgment of plaintiffs Fireman's Fund Insurance Company, 580 & 530 Swedesford

Associates, LP and Keystone Property Group, GP, LLC, and defendant Zurich American Insurance

Company's response thereto, it is hereby Ordered and Decreed that the motion is Denied, and

defendant Zurich American Insurance Company had no obligation to provide insurance coverage to

plaintiffs 580 & 530 Swedesford Associates, LP and Keystone Property Group, GP, LLC for the civil

action styled as *Dadario v. 580 and 530 Swedesford Associates, et al*, CCP Chester County, No. 08-

00924.


By the Court:


_____
                             J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIREMAN'S FUND INSURANCE
COMPANY, 580 & 530 SWEDESFORD
ASSOCIATES, LP, and KEYSTONE
PROPERTY GROUP, GP, LLC,

CIVIL ACTION
NO. 2:10-CV-04293-CMR

*Plaintiffs,*

vs.

ZURICH AMERICAN INSURANCE
COMPANY,

[This Document has been
Electronically Filed]

*Defendant.*

## RESPONSE OF DEFENDANT ZURICH AMERICAN INSURANCE COMPANY
## TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Zurich American Insurance Company, by and through its counsel, Bodell, Bove,
Grace & Van Horn, P.C., hereby files a response to the Motion for Partial Summary Judgment of
plaintiffs and avers the following:

1.    This averment does not require a response.

2.    As set forth in defendant Zurich American Insurance Company's own Motion for Summary
      Judgment, as well the accompanying Memorandum of Law submitted herein, coverage is
      limited under the Owner's and Contractor's Protective Liability ("OCPL") policy form to
      injuries that occur while Schindler is actually performing work at the premises on the
      elevators. Schindler was not working on the elevators at the time of the accident, and the
      denial of coverage for 580 & 530 Swedesford Associates, LP and Keystone Property Group,
      GP, LLC was consistent with the terms of the insuring grant.

**WHEREFORE,** defendant Zurich American Insurance Company respectfully requests that
this Honorable Court enter an Order denying the motion for partial summary judgment of plaintiffs,

and granting defendant's motion for summary judgment.

Respectfully Submitted,

/s/ Marc J. Syken
Louis A. Bové, Esquire
Marc J. Syken, Esquire
PA 53071/PA 62533
BODELL, BOVÉ, GRACE & VAN HORN, P.C.
One Penn Square West, 6th Floor
30 South 15th Street
Philadelphia, PA 19102
Tel: (215) 864-6600
Fax: (215) 864-6610
lbove@bodellbove.com
msyken@bodellbove.com
*Attorney(s) for Defendant,*
*Zurich American Insurance Company*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, 580 & 530 SWEDESFORD ASSOCIATES, LP, and KEYSTONE PROPERTY GROUP, GP, LLC,<br><br>       *Plaintiffs,*<br><br>      vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>       *Defendant.* | CIVIL ACTION<br>NO. 2:10-CV-04293-CMR<br><br><br><br><br>[This Document has been Electronically Filed] |

## BRIEF IN SUPPORT OF THE RESPONSE OF DEFENDANT ZURICH AMERICAN INSURANCE COMPANY TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs identify not a single decision in their motion for summary judgment supporting their view that coverage applies under an Owner's and Contractor's Protective Liability ("OCPL") insuring grant when the designated elevator contractor is not actually at the premises performing work on the elevator at the time of the loss. The "intended use" and "your acts" exclusions have been identified repeatedly by Zurich in this litigation and form the basis of Zurich's coverage position, yet were not addressed by plaintiffs in their motion. In particular, the "intended use" exclusion is at the heart of this litigation, and has been analyzed by multiple courts in the context of elevator accidents. These decisions underlinely hold coverage is excluded when the designated contractor is not performing work on the elevator at the time of the loss. Each act of servicing the elevator is treated as a discreet insurable event under the OCPL form, and coverage lies only for an accident that occurs while the contractor is performing the work under the contract. There is no averment in the Dadario Complaint that Schindler was working on the elevator at the time of the accident. Conversely, Zurich had no coverage obligation to the plaintiffs for the *Dadario* litigation.

## I.    FACTUAL BACKGROUND

Defendant Zurich American Insurance Company ("Zurich") filed a motion for summary judgment concurrently with the plaintiffs, and set forth a detailed factual and procedural recitation in its supporting memorandum. Zurich will endeavor to avoid repeating that recitation herein, and will focus on the facts pertinent to rebutting plaintiffs' motion for partial summary judgment. Though only a duty to defend is at issue, plaintiffs repeatedly reference deposition testimony taken in the *Dadario* litigation. Given plaintiffs' references to the testimony, Zurich will on occasion cite to the deposition testimony, but Zurich notes the duty to defend is determined by the allegations in the Dadario Complaint. *See Kvaerner U. S., Inc. v. Commer. Union Ins. Co.*, *infra*.

At issue is the defense of the personal injury claim filed by Gaetano Dadario ("Dadario") at *Dadario v. 580 and 530 Swedesford Associates, et al*, CCP Chester County, No. 08-00924 (the "*Dadario* litigation") against 580 & 530 Swedesford Associates, LP ("Swedesford"), and Keystone Property Group, GP, LLC ("Keystone"). Dadario was a security guard at 530 East Swedesford Road, Wayne, Pennsylvania, and alleged he was injured on August 29, 2006 at 5:30 AM while attempting to enter an elevator on the third floor of the building. Dadario Complt. at ¶7.

Dadario averred the owner of the building, Swedesford, was directly responsible for the condition of the elevators, knew or should have known of the defective and dangerous condition of the elevator, and was negligent, *inter alia*, for failing to properly maintain and inspect the elevator, for failing to correct the condition, and for failing to warn of the condition. *Id.* at ¶¶8, 9.[1]

---

[1] John Patrick Oberholtzer was the operating engineer for the building where the accident took place. Of note, Oberholtzer testified he too investigated the operation of the elevators. Oberholtzer, pp. 37-38, lns. 23-6 ("Q. And you actually said you would go out to investigate those problems initially; is that correct? A. Yes. Q. What would you do to investigate the problem? A. Again, get on the elevator, ride the elevator, see if it would level."). *See* Oberholtzer testimony at Exhibit "A."

Dadario also alleged that as property manager, Keystone was directly responsible for the condition of the elevators in the building and was negligent, *inter alia*, for failing to properly maintain and inspect the elevator, for failing to correct the condition, and for failing to warn of the condition. *Id.* at ¶¶17, 19, 20.[2]

Contrary to the representations of plaintiffs, the Dadario Complaint specifically charges Swedesford and Keystone with being responsible for the elevators.[3] As to Schindler:

- There are no allegations that Schindler was working on the elevators at the time of the accident;

- There are no allegations that the elevator was being serviced at the time of the accident by any elevator maintenance company;

- There are no allegations that Schindler was on the premises at the time of the accident;

- There are no allegations that any elevator maintenance company was on the premises at the time of the accident;

- There are no allegations of negligence pled against Schindler; and

- There are no allegations of negligence pled against any elevator maintenance company.

---

[2]Kayte Faux, a senior property manager for Keystone, testified that the building maintenance staff inspected the building and elevators each morning. Faux, p. 29, lns. 3-10. ("Q. Do you know if there's any policy or practice with your company in terms of inspections of the elevators in the building? A. Our maintenance staff inspects the buildings in the morning. They'll ride them typically first thing in the morning."). *See* Faux testimony at Exhibit "B."

[3]*See* Dadario Complaint, at ¶¶14, 17 ("At all times material hereto, Swedesford Associates had under its care, supervision, control, maintenance and/or was responsible for the care, maintenance and condition of said property located at 530 East Swedesford Road, Wayne, Pennsylvania, including but not limited to the elevators in the building.....At all times material hereto, Keystone possessed, controlled, supervised, managed and maintained or was responsible for the supervision, care and maintenance of the said office building in question, including supervision, care and maintenance of the elevators in said building.")

Schindler was joined as a party by Swedesford and Keystone on January 8, 2009 (one year after the Dadario suit was filed, and after Swedesford and Keystone had already deposed Dadario). The Joinder Complaint confirmed that Schindler was not performing work at the site when the loss occurred, as it averred Schindler technicians were working on the elevators located at 530 Swedesford Road "**in the days preceding**" the accident. *See* Joinder Complt. at ¶11. In its Answer, Schindler stated "it performed preventive maintenance to the elevators...on August 24, 2006," which was **five days** prior to the accident. Answer at ¶11.[4] At trial in 2011, the jury found Swedesford, Keystone, and Schindler negligent, but concluded their negligence was not a factual cause of Dadario's harm, confining this coverage litigation to whether Zurich had an obligation to defend Swedesford and Keystone pursuant to the OCPL grant.

### The Continuing Service Contract

In their motion, plaintiffs acknowledged the Addenum to the Continuing Service Contract, which limited the insurance procurement obligation to the OCPL grant, and expressly deleted any requirement that Swedesford and Keystone be named as additional insureds for the commercial general liability ("CGL") grant. An OCPL grant insures a limited set of risks when compared to a CGL grant. Zurich was *not* providing coverage for every claim involving an elevator accident, as the OCPL grant is subject to the "intended use" and "your act" exclusions. Each act of servicing

---

[4]Thomas Keil, a service mechanic for Schindler, testified Schindler performed a preventive maintenance check at the building on August 24, 2006, based on his review of the time tickets for "in and around the time of the accident." *See* Keil testimony, p. 8, lns. 15-18; p. 28, lns 7-8, at Exhibit "C." The building's operating engineer, Oberholtzer, testified that Schindler was always responsive to service calls. *See* Oberholtzer, p. 37, lns. 5-18 ("Q. When you called Schindler, Schindler would respond in a timely fashion? A. Yes...Do you recall any specific instances where Schindler repaired a problem and you continued to have problems with the elevators specifically in the 530 building? A. No. Q. So Schindler did a good job in responding to your calls on repairing the elevators? A. Yes.").

the elevator is a discreet event under the OCPL policy, and coverage lies for the owner when an accident occurs while the contractor is onsite performing work on the elevator under the contract.

## II.     STATEMENT OF QUESTION PRESENTED

Whether Zurich did not have a duty to defend Swedesford and Keystone for the *Dadario* litigation when Schindler was not servicing the elevator at the time of the loss?

Suggested Answer:     Yes.

## III.     ARGUMENT

An insurer under an OCPL grant is simply not insuring the same type of risks as in a CGL grant. The Dadario Complaint did not allege the accident occurred while Schindler was performing work on the elevator, and is therefore excluded under the OCPL policy form. Zurich discussed the grant of coverage under the OCPL form at length in its own motion, and will attempt to limit the argument section to the positions raised by plaintiffs in their motion.

### A.     Duty to Defend

In arguing the grant of coverage was triggered in favor of Swedesford and Keystone, plaintiffs posit the allegations pled by Dadario against Swedesford and Keystone were in reality claims premised upon Swedesford's and Keystone's negligent supervision of Schindler. *See* plaintiffs Brief at p. 10 ("In other words, the complaint alleges not only that Keystone/Dadario were liable for their own maintenance or inspection, but were also 'responsible for' for [sic] their 'supervision' of the elevator maintenance performed at the Subject Premises."). Plaintiffs are asking this Court to read into the Dadario Complaint claims against Schindler that simply were not pled. This is forbidden in a duty-to-defend analysis under Pennsylvania law. *See Kvaerner U. S., Inc. v. Commer. Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 895 (2006) ("We now conclude that the

Superior Court did in fact err in looking beyond the allegations raised in Bethlehem's complaint to determine whether National Union had a duty to defend Kvaerner."); *Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 238 (3d Cir. Pa. 2010) ("We examine only the allegations in the complaint when determining whether the insurance company must defend the insured.").[5]

Turning to the Joinder Complaint filed by Swedesford and Keystone against Schindler, plaintiffs maintain the averments pled against Schindler created a duty to defend. Brief, at p. 10 ("Should there remain any question on [the duty to defend] it is laid to rest[6] by the joinder complaint."). As recognized by Judge O'Neill, it would be improper to permit a putative insured to manufacture a coverage obligation simply by alleging a claim against the named insured in a third-party action.

> I find that the third party complaint did not trigger Cumberland's duty to defend Dale [putative insured] in the third party action itself because Dale was the plaintiff, not the defendant, in the third party action...Additionally, the third party complaint cannot be used to bolster the allegations in the original complaint and thereby trigger Cumberland's duty to defend Dale in Francis's original lawsuit. To use the third party complaint in such a way would violate the rule that "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action."

*Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, No. 09-1115, 2010 U.S. Dist. LEXIS 127126, *25 (E.D. Pa. Nov. 30, 2010) (O'Neill, J.) (citing *Kvaerner*, 908 A.2d at 896).

The averments in the underlying personal injury complaint control the coverage obligation,

---

[5]Plaintiffs further state "Given that Schindler was indisputably the elevator maintenance contractor, that it admits it was present within days prior to the accident to perform maintenance, and that these services should have inspected for the very condition that caused plaintiff's fall, plaintiff's complaint certainly pleads a potentially covered claim." Plaintiffs' brief, p. 10. These suppositions are outside the four corners of the Dadario Complaint

[6]In one sense, the joinder complaint did lay to rest the duty to defend, as the joinder complaint confirmed that Schindler was not performing maintenance on the elevator at the time of Dadario's accident.

and there is no averment in the Dadario Complaint that Schindler was servicing the elevator at the time of the loss, was at the building at the time of the loss, or was even negligent. It's no wonder that plaintiffs waited for close to two years to tender the claim to Zurich.

Further, in arguing in favor of a duty to defend, plaintiffs have set forth deposition testimony adduced in the underlying action. However, this testimony only confirmed that Schindler was not working on the elevator at the time of the loss. Neither the pleadings nor the deposition testimony establish the loss occurred during the servicing of the elevator.

### B.   Exclusions to Coverage

Assuming coverage is triggered under Section I of the OCPL grant, any defense obligation is precluded under the "intended use" and "your acts" exclusion. In Zurich's Affirmative Defenses to plaintiffs' Complaint, Zurich specifically identified these exclusions. *See* 10th and 11th Affirmative Defenses. The "intended use" exclusion was also identified in Zurich's Concise Statement of the Case. In an attempt to clarify the issues in this litigation, Zurich wrote to plaintiffs on November 17, 2010 and identified the "intended use" and "your acts" exclusion verbatim. *See* correspondence of November 17, 2010 at Exhibit "D." The application of these exclusions, particularly the "intended use" exclusion is at the crux of this coverage litigation. It was disingenuous for the plaintiffs to have not addressed the application of the exclusions in their initial motion (other than a glancing reference in a footnote) when the exclusions animate the coverage litigation, and the omission is telling as to plaintiffs' coverage position.

Per the intended use exclusion, the OCPL policy does not cover "bodily injury...which occurs after ...the portion of the 'contractor's' 'work', out of which the injury or damage arises, has been put to its **intended use** by any person or organization..." OCPL form, Section I, 2.c. Courts that

have examined this exclusion in the context of elevator accidents have uniformly held each act of servicing the elevator is viewed a "<u>discreet insurable event</u>" under the intended use exclusion, and coverage therefore does not apply to an incident that takes place while the contractor is *not* servicing the elevator.

> In effect, the [OCPL] policy treats each act of servicing or maintenance as a discreet insurable event. Schindler was not servicing or maintaining the escalator and the escalator was being put to its intended use when James was injured. Accordingly, this occurrence falls within the (b)(2) exclusion.

*James v. Hyatt Corp. of Delaware*, 981 F.2d 810, 813-814 (5th Cir. La. 1993) (OCPL carrier did not have a coverage obligation to the hotel for a fall on an escalator serviced by Schindler when Schindler was performing work on the escalator).[7]

The *James* decision was followed in *Trizec Props., Inc. v. Millar Elevator Serv. Co.*, 1999 Mich. App. LEXIS 1342 (Mich. Ct. App. Mar. 26, 1999), where an elevator failed to level itself with the lobby floor. The court enforced the intended use exclusion in an OCPL grant issued by Zurich and held that there was no coverage for the owner under the intended use exclusion for those losses that occur when the contractor is not engaged in servicing the elevator:

> [T]the policy treats each act of service or maintenance as a <u>discreet insurable event</u>. Thus, injury occurring at a time when Millar was not specifically engaged in servicing the elevator remains excluded by the policy.

*Trizec, supra*, at *4-5 (emphasis added).

*James* was followed by another case involving a Zurich OCPL Policy, *Zurich Ins. Co. v. Principal Mut. Ins. Co.*, 134 Md. App. 643, 761 A.2d 344 (2000), where an office worker was

---

[7]Plaintiffs did not review any decisions addressing the intended use exclusion. The intended use decisions cited in this section of the memorandum were identified in Zurich's initial motion, and appended to the motion for the Court's review.

injured when an elevator fell or dropped from the eleventh floor in an extremely rapid fashion to the basement. Pursuant to the "intended use" and "your work" exclusions in the OCPL grant, Zurich refused to defend the owner and building manager. In contrast to the *Dadario* litigation, discovery revealed that on the day of the accident, the service company had actually performed safety tests on all four elevators in the building and returned the elevators to regular service following the tests. But no service employees were at the building at the time of the accident. The court upheld Zurich's denial of coverage, noting **"The undisputed facts in this case were that at the time of the accident Millar's employers were not on the premises,"** and that the "'intended use' of an elevator in an office building is to transport passengers." *Zurich Ins. Co.*, 761 A.2d at 348.

*Zurich Ins. Co. v. Principal Mut. Ins. Co.* was closely followed by an Illinois Court in *Liberty Mut. Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 363 Ill. App. 3d 335, 842 N.E.2d 170, 299 Ill. Dec. 431 (Ill. App. Ct. 1st Dist. 2005), which involved a suddenly falling elevator. As with Dadario's suit, the injured parties alleged the owner of the building was negligent "by failing to properly maintain and require proper maintenance of the elevator to prevent its falling from the fifteenth floor to the ground floor; by permitting use of the elevator when it knew or should have known of the unsafe conditions of the elevator; and by failing to adequately provide markings on the elevators for their proper use."[8] The court held the OCPL carrier for the elevator service company did not have a coverage obligation to the owner for the loss based upon the intended use exclusion. *Liberty Mut. Fire Ins. Co.*, 842 N.E.2d at 174 ("The underlying complaints alleged that the incident occurred as the subject elevator was taking employees of another contractor to their work site; the

---

[8]There actually was an employee of the contractor on site, but he was not performing maintenance pursuant to the service contract.

elevator's intended purpose. Therefore, the incident falls within exclusion (c)(2) of the OCP policy.").

Zurich has more than met its burden of demonstrating the application of the intended use exclusion to bar a coverage obligation since the Dadario Complaint pled the elevator was being used for an intended use, and most importantly, did *not* allege that Schindler was performing any type of work on the elevator at the time of the incident. As recognized by courts across the country, each act of servicing the elevator is a discreet event under the OCPL policy, and coverage lies for the owner when an accident occurs while the contractor is actually performing work under the contract. Thus, the intended use exclusion bars coverage for Swedesford and Keystone as (1) Schindler personnel were not working at the designated job location at the time of the accident, (2) there is no allegation that Schindler was working on the elevator, and (3) the elevator was being used for an intended use at the time of the accident.

### C. Pre-Tender Defense Costs

Plaintiffs maintain that should Zurich owe a defense obligation, Zurich is entitled to recoup pre-tender defense costs. Instantly, there is no coverage obligation so there is no obligation for pre-tender defense costs. However, assuming there was a coverage obligation, the timeline of events and the OCPL policy precludes an obligation for pre-tender defense costs. Dadario filed his personal injury complaint on January 29, 2008. Swedesford and Keystone then filed a joinder action on January 9, 2009, after having conducted the Dadario deposition on November 28, 2008. Yet it was not until November 13, 2009, that plaintiffs tendered the claim to Zurich, per the allegations in the plaintiffs' Complaint.

The OCPL form provides that "you [Swedesford and Keystone are the listed insureds on the

10

OCPL form] must see to it that we are notified as soon as practicable of an 'occurrence' which may result in a claim." OCPL form, Section IV, 4.a. This was not done. Rather Swedesford and Keystone waited close to **two years** to tender their defense to Zurich, and **one year** after the deposition of Dadario.

There are no Pennsylvania state court decisions addressing pre-tender defense costs, though Zurich acknowledges that a district court has allowed the recoupment of defense costs, but only where there is no prejudice to the carrier. *Compare Erie Ins. Exch. v. V.I. Enters.*, 264 F. Supp. 2d 261, 265 (D.V.I. 2003) (rejecting claim for pretender defense costs) (citing *Elan Pharm. Research Corp. v. Employers Ins.*, 144 F.3d 1372, 1382 (11th Cir. Ga. 1998) ("the provision of notice to the insurer triggers the duty to defend compels our conclusion that the obligation does not include expenses incurred before that notification.")).

Given the length of the delay in tendering the claim to Zurich, and the reliance on an incorrect insurance procurement provision as pled in this litigation,[9] the claim for pre-tender defense costs should be denied, assuming there was a coverage obligation.

## IV.   CONCLUSION

Zurich was *not* providing coverage for every claim involving an elevator accident at 530 East Swedesford Road under the OCPL grant. Unlike a CGL grant, the OCPL grant is subject to the "intended use" and "your act" exclusions. Pursuant to the "intended use" exclusion, each act of servicing the elevator is an insurable event, and coverage is only available for an accident that occurs

---

[9]Zurich wrote to plaintiffs after this litigation commenced in an attempt to formally address and clarify the basis of the tender, but did not receive a response. *See* Exhibit "D."

while Schindler was working on the elevator pursuant to the Continuing Service Contract. There was no averment by Dadario that Schindler was working on the elevators at the time of the accident. Schindler in fact was not working on the elevators at the time of the accident, and Dadario was injured during an intended use of the elevator. Zurich did not have a duty to defend Swedesford and Keystone for the *Dadario* litigation, and it's denial of coverage is consonant with the prevailing law across the country addressing similar factual scenarios and insuring grants.

**WHEREFORE,** defendant Zurich American Insurance Company respectfully requests that this Honorable Court enter an Order denying the motion for partial summary judgment of plaintiffs, and granting defendant's motion for summary judgment.

Respectfully Submitted,

/s/ Marc J. Syken
Louis A. Bové, Esquire
Marc J. Syken, Esquire
PA 53071/PA 62533
BODELL, BOVÉ, GRACE & VAN HORN, P.C.
One Penn Square West, 6th Floor
30 South 15th Street
Philadelphia, PA 19102
Tel: (215) 864-6600
Fax: (215) 864-6610
lbove@bodellbove.com
msyken@bodellbove.com
*Attorney(s) for Defendant,*
*Zurich American Insurance Company*

# Exhibit A

Certified Copy

IN THE COURT OF COMMON PLEAS
CHESTER COUNTY, PENNSYLVANIA

GAETANO DADARIO,

       Plaintiff,

    -vs-

580 AND 530 SWEDESFORD
ASSOCIATES, L.P.,
KEYSTONE PROPERTY GROUP GP,
LLC AND GENERAL ELECTRIC
COMPANY,

       Defendant,

    -vs-

SCHINDLER ELEVATOR
CORPORATION,

       Additional Defendant.

NO. 08-00924

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DEPOSITION OF**

**JOSEPH PATRICK OBERHOLTZER**

Thursday, April 16, 2009,
11:45 a.m.

Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street, 21st Floor
Philadelphia, Pennsylvania, 19103

Reported By: Joseph J. Pignatelli
a Registered Professional Reporter and Commissioner in and for the Commonwealth
of Pennsylvania.



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044
Telephone:

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

1   Q.      And when you rode the elevator, the

2   elevator, as far as you could tell, was working

3   fine?

4   A.      Correct.

5   Q.      When you called Schindler, Schindler would

6   respond in a timely fashion?

7   A.      Yes.

8   Q.      And when you did report a problem with the

9   elevator, Schindler would repair the problem?

10  A.      Yes.

11  Q.      Do you recall any specific instances where

12  Schindler repaired a problem and you continued to

13  have problems with the elevators specifically in

14  the 530 building?

15  A.      No.

16  Q.      So Schindler did a good job in responding

17  to your calls on repairing the elevators?

18  A.      Yes.

19  Q.      You also testified earlier that you do

20  recall some reports maybe from Diane King about

21  the elevators not leveling; is that correct?

22  A.      That's correct.

23  Q.      And you actually said you would go out to

24  investigate those problems initially; is that



Toll Free: 888.486.4044

ESQUIRE
an Alexander Gallo Company

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

38

1    correct?

2    A.      Yes.

3    Q.      What would you do to investigate the

4    problem?

5    A.      Again get on the elevator, ride the

6    elevator, see if it would level.

7    Q.      Do you recall ever being able to duplicate

8    any of the leveling problems she reported?

9    A.      No.

10   Q.      Does that mean you were not able to

11   duplicate the problems?

12   A.      Correct.

13   Q.      On those occasions when there did not

14   appear to be a problem with the elevator, would

15   you call Schindler?

16   A.      Yes.

17   Q.      When you called Schindler, what would you

18   tell them on those occasions?

19   A.      We had a report that it was not leveling,

20   we checked it, it seems to run fine, we did not

21   notice anything, would they just have a guy come

22   out to check it.

23   Q.      And to your knowledge, did they send

24   someone out to check those problems?



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Exhibit B

IN THE COURT OF COMMON PLEAS

CHESTER COUNTY, PENNSYLVANIA

- - -



GAETANO DADARIO

   Plaintiff,     CIVIL ACTION

  vs.         NO. 08-00924

580 AND 530 SWEDESFORD

ASSOCIATES, L.P., KEYSTONE

PROPERTY GROUP, GP, LLC and

GENERAL ELECTRIC COMPANY

   Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEPOSITION OF

KAYTE FAUX

November 25, 2008

1:00 p.m.

Law Offices of Michael A. Ruggieri

3405 West Chester Pike, Newtown

Square, Pennsylvania  19073

Reported By: Mary F.Saile

Registered Professional Reporter and

Notary Public in and for the Commonwealth of Pennsylvania

1  A.      No, I didn't have enough information

2  to -- on the incident.

3  Q.      Okay.  All right.  Do you know if

4  there's any policy or practice with your

5  company in terms of inspections of the

6  elevators in the building?

7  A.      Our maintenance staff inspects the

8  buildings in the morning.  They'll ride them

9  typically first thing in the morning.

10 Q.      How many people are on the

11 maintenance staff in that building?

12 A.      There's two.

13 Q.      And back in August of 2006, how many

14 were there, two?

15 A.      There were two.

16 Q.      And Joe Smith is one of them?

17 A.      No, he is the assistant property

18 manager.

19 Q.      Okay.  Who are the --

20 A.      Joe Oberholtzer was the maintenance

21 person.

22 Q.      Okay.  And who else?  You said there

23 were two.

24 A.      It was Bill Clemson at that point in

Exhibit C

Certified Copy

IN THE COURT OF COMMON PLEAS
CHESTER COUNTY, PENNSYLVANIA

GAETANO DADARIO,

      Plaintiff,

    -vs-

580 AND 530 SWEDESFORD
ASSOCIATES, L.P.,
KEYSTONE PROPERTY GROUP GP,
LLC AND GENERAL ELECTRIC
COMPANY,

      Defendant,

    -vs-

SCHINDLER ELEVATOR
CORPORATION,

      Additional Defendant.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~

NO. 08-00924

DEPOSITION OF

THOMAS KEIL

Thursday, April 16, 2009,
10:20 a.m.

Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street, 21st Floor
Philadelphia, Pennsylvania, 19103

Reported By: Joseph J. Pignatelli
a Registered Professional Reporter and Commissioner in and for the Commonwealth
of Pennsylvania.



Toll Free: 888.486.4044
Telephone:

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

8

1   Q.      Do you understand those instructions?

2   A.      Yes, I do.

3   Q.      Is there any reason you can think of why

4   the deposition shouldn't go forward?

5   A.      No.

6   Q.      Mr. Keil, did you review anything in

7   preparation for today's deposition?

8   A.      Yes, I did.

9   Q.      What did you review?

10  A.      Sometime time tickets.

11  Q.      What are time tickets?

12  A.      A description of the complaint that the

13  customer would call in and also a description of

14  the work that I did.

15  Q.      For what period of time did you look at

16  those time tickets?

17  A.      In and around the time of the accident.

18  Q.      Did you bring those with you?

19  A.      Yes.

20          MS. VENTOLA:  I have them.

21          MS. STRAGGAS:  Can you give those to

22  us before we go on?

23          MS. VENTOLA: Those are my only

24  copies.



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

28

1  whatever parts were necessary and then repeatedly

2  pushed the button to make sure that it cancels

3  when an elevator arrives and resolves the problem.

4  Q.      Let's go to the next page, if you don't

5  mind.  This is a preventative maintenance.

6  A.      Yes.

7  Q.      And the date is August twenty-fourth, 2006.

8  A.      Okay.

9  Q.      Your name is on it?

10 A.      Yes.

11 Q.      I see on the notification number it has a

12 "P" which means that's preventative, is that what

13 the P is for?

14 A.      Yes.

15 Q.      If you arrived on August twenty-fourth,

16 2006, does that mean that all your work was done

17 that day --

18              MS. VENTOLA:  Objection to the form.

19 BY MS. STRAGGAS:

20 Q.      -- for 530?

21 A.      All the work that I did on that particular

22 day?

23 Q.      Yes.

24 A.      Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Exhibit D

# BODELL, BOVE, GRACE & VAN HORN

### A PROFESSIONAL CORPORATION

1913 GREENTREE ROAD
SUITE A
CHERRY HILL, NJ 08034
(856) 414-1441
FAX: (856) 414-9119
MANAGING PARTNER: LOUIS A. BOVÉ

LOUIS A. BOVÉ
Direct dial: (215) 864-6602
Direct E-mail: lbove@bodellbove.com

MARC J. SYKEN
Direct dial: (215) 864-0223
Direct E-mail:
msyken@bodellbove.com

**ATTORNEYS AT LAW**
ONE PENN SQUARE WEST
SIXTH FLOOR
30 SOUTH 15TH STREET
PHILADELPHIA, PA 19102

(215) 864-6600
FAX (215) 864-6610
http://www.bodellbove.com
e-mail: lawyers@bodellbove.com

1225 NORTH KING STREET
SUITE 1000
P.O. BOX 397
WILMINGTON, DE 19899
(302)655-6749
FAX: (302)655-6827

November 17, 2010

**Via Electronic and Regular Mail**

580 & 530 Swedesford Associates
Keystone Property Group c/o
Nicholas A. Cummins, Esquire
Bennett, Bricklin & Saltzburg LLLC
1601 Market Street, 16th Floor
Philadelphia, PA 19103

Re: Fireman's Fund Insurance Co., et al v. Zurich American Insurance Co.
<u>USDC for the Eastern District of PA, No. 10-4293</u>
Dadario v. 580 and 530 Swedesford Associates, et al,
CCP Chester County, No. 08-00924

Dear Mr. Cummins:

We write on behalf of Zurich American Insurance Company ("Zurich") to address the claim for coverage being advanced by 580 & 530 Swedesford Associates ("Swedesford") and Keystone Property Group ("Keystone") for the litigation styled *Dadario v. 580 and 530 Swedesford Associates, et al*, CCP Chester County, No. 08-00924 (the "*Dadario* litigation"). Per the allegations in the Declaratory Judgment Complaint pending at USDC for the Eastern District of PA, No. 10-4293, Swedesford and Keystone sought coverage from under Zurich under Commercial General Liability Policy GLO 6445435, which includes a commercial general liability (CGL) coverage grant, and is endorsed to include an Owners and Contractors Protective Liability grant at OCP 4905576 (the "OCP" coverage grant).

Coverage was claimed pursuant to a Continuing Service Contract with Schindler Elevator Corporation ("Schindler"). However, that agreement was subject to an Addendum, which was not attached to the Declaratory Judgment Complaint filed by Swedesford and Keystone. The operative contract with the Addendum was in fact appended to Zurich's Answer, and Zurich's understanding is that Swedesford and Keystone now concede this is the controlling contract. Further, it is also Zurich's understanding that Swedesford and Keystone no longer contend they are entitled to coverage under the

Zurich CGL coverage grant. In light of these recent clarifications, we write to briefly to address the claim for coverage of Swedesford and Keystone under the Zurich OCP coverage grant.

The OCP form provides the following grant of coverage.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III-Limits of Insurance; and
(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" and arises out of:

(a) Operations performed for you by the "contractor" at the location specified in the Declarations; or
(b) Your acts or omissions in connection with the general supervision of such operations; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Section I., 1.,"Insuring Agreement."

This grant is subject to various limitations, including but not limited to the following exclusions:

580 & 530 Swedesford Associates
Keystone Property Group c/o
Nicholas A. Cummins, Esquire
November 17, 2010
Page 3

This insurance does not apply to:

c. Work Completed Or Put To Intended Use

"Bodily injury" or "property damage" which occurs after the earlier of the following times:

(1) When all "work" on the project (other than service, maintenance or repairs) to be performed for you by the "contractor"[1] at the site of the covered operations has been completed; or

(2) When the portion of the "contractor's" "work", out of which the injury or damage arises, has been put to its intended use by any person or organization, other than another contractor or subcontractor working directly or indirectly for the "contractor" or as part of the same project.

\*\*\*

d. Acts Or Omissions By You And Your Contractor

"Bodily injury" or "property damage" arising out of your,[2] or your "employees'", acts or omissions other than general supervision of "work" performed for you by the "contractor".

Section I., 2.(c), (d), "Exclusions."

The averments in the underlying Complaint contain no allegations of negligence against Schindler. Further, the Joinder Complaint filed by Swedesford and Keystone does not aver Schindler was performing any work at the accident location when the accident occurred. In fact, the Joinder Complaint states that Schindler technicians were working on the elevators located at 530 East Swedesford Road "in the days preceding" the accident; not on the day of the accident. The documents that have been provided in connection with the self-executing disclosures confirm that Schindler was not performing any work on the elevators at 530 East Swedesford Road at the time of the accident giving rise to the *Dadario* litigation. Thus, Zurich must deny the request for coverage of Swedesford and Keystone under the OCP Policy.

---

[1]The contractor on the Declarations is identified as "Schindler Elevator Corporation."

[2]The preamble to the coverage form states "[t]he terms "you" and "your" refer to the Named Insured shown in the declarations, "580 & 530 Swedesofrd Associates, L.P. c/o Keystone Properties Group, Inc."

If there is further information you would like Zurich to consider, please identify the same, and our office will forward that information to Zurich.

Please be advised that nothing contained herein constitutes a waiver of any of Zurich's rights and/or defenses under any Zurich Policy and that Zurich continues to reserve all of its rights and defenses under the Zurich Policy(ies) and applicable law, whether or not stated herein. This letter is not intended, nor should it be construed as an exhaustive listing of all policy terms and provisions applicable herein.

Zurich reserves the right to identify additional policy terms in the future and to raise additional bases for its stated position. Any failure of Zurich in this or any other communication to expressly identify any basis for its position is not intended to be, nor should it be viewed as, a waiver of any such other defenses or bases, whether known or unknown. Zurich reserves all of its rights under the terms, conditions, definitions, exclusions, limitation of liability and all other provisions of the Zurich Policy(ies), all of which are incorporated by reference herein.

Thank you for your attention to this matter.

Very truly yours,

BODELL, BOVE, GRACE & VAN HORN

Louis A. Bové
Marc J. Syken

## CERTIFICATE OF SERVICE

The undersigned certifies that the Response of defendant Zurich American Insurance Company to plaintiffs' Motion for Partial Summary Judgment with supporting documents has been electronically filed on this date and is available for viewing on the Court's ECF System. Electronic service of the Notice of Electronic Case Filing upon the following constitutes service of the filed document and is deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure:

Warrren F. Sperling, Esquire
Nicholas A. Cummins, Esquire
Bennett, Bricklin & Saltzberg LLC
1601 Market Street
16th Floor
Philadelphia, PA 19103-2393
cummins@bbs-law.com

 s/Marc J. Syken
Marc J. Syken, Esquire (PA 62533)
**BODELL, BOVE, GRACE & VAN HORN, P.C.**
One Penn Square West, 6th Fl.
30 S. 15th Street
Philadelphia, PA 19102
Tele:(215) 864-6600
Fax: (215) 864-6610
msyken@bodellbove.com
*Attorneys for Defendant Zurich American Insurance*
*Company*

Date: April 11, 2011