IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| FIREMAN'S FUND INSURANCE CO., 580 & 530 SWEDESFORD ASSOCIATES, LP & KEYSTONE PROPERTY GROUP, GP, LLC,  Plaintiffs,  v.  ZURICH AMERICAN INSURANCE CO.,  Defendant. | CIVIL ACTION  NO. 10-cv-4293 |

## MEMORANDUM ORDER AND OPINON

**Rufe, J.**                                                                                                           **July 19, 2011**

In this insurance-coverage dispute, both parties have filed motions for summary judgment. The court will grant the Defendant's motion for summary judgment and deny the Plaintiff's motion for partial summary judgment.

### I. BACKGROUND[1]

The pending litigation arises from two insurance companies' dispute over which is responsible for the costs of defending a civil tort action brought against 580 & 530 Swedesford Associates, L.P and Keystone Property Group, GP, LLC.

The underlying civil tort action took place in the Chester County Court of Common Pleas, Pennsylvania under the caption Dadario v. 580 & 530 Swedesford Associates, L.P., et al..[2] That

---

[1] These facts are undisputed by the Parties.

[2] Def. Mot. for Summ. J. Ex. A. ("Dadario Compl.").

1

case involved an injury allegedly sustained by Dadario, a security guard, when he boarded an elevator on the third floor of 530 East Swedesford Road, Wayne, Pennsylvania ("530 East")[3] Swedesford owns and operates 530 East; Keystone manages the premises.[4]

In January 2008, Dadario filed his claims against Swedesford and Keystone in state court, alleging that in August 2006, he tripped and fell over the "defective, uneven and/or irregular surface of the elevator floor" at 530 East.[5] Dadario's complaint alleged, *inter alia*, negligent supervision of the maintenance and inspection of the elevators. A year later, Swedesford and Keystone filed a four-count joinder complaint against Schindler Elevator company, which had contracted with Swedesford to maintain and inspect the elevators located on its property,[6] alleging negligence and breach of contract.[7] In its answer to the joinder complaint, Schindler admitted that it performed maintenance on the elevators at 530 East five days before the accident.[8]

At the time of that accident, Fireman's Fund Insurance Company insured Swedesford under a primary commercial general liability policy.[9] Swedesford and Keystone were also insured by Defendant Zurich American Insurance Company, under a Owner's and Contractor's Protective Liability ("OCPL") policy issued to Schindler, which provides coverage for injuries arising out of

---

[3] Dadario Compl. ¶ 7.

[4] Def.'s Mot. for Summ. J. ¶¶ 6, 7.

[5] Dadario Compl. ¶ 7; Def.'s Mot. for Summ. J. ¶ 11.

[6] See Def.'s Mot. for Summ. J. Ex. D (Continuing Service Contract).

[7] Def.'s Mot. for Summ. J. ¶ 16.

[8] Pls.' Mot. for Summ. J. ¶¶ 5, 11, 14.

[9] Def.'s Mot. for Summ. J. ¶ 8.

work performed by Schindler. Schindler secured the OCPL policy pursuant to a Continuing Service Contract with Swedesford.[10] In late 2009, Fireman's Fund wrote to Zurich, demanding it indemnify and defend Swedesford and Keystone pursuant to the OCPL policy.[11] Zurich refused,[12] and Fireman's Fund assumed Swedesford's and Keystone's defense in the Dadario litigation.[13]

On July 27, 2010, Plaintiffs Fireman's Fund, Swedesford, and Keystone filed a three-count complaint in the Court of Common Pleas, Philadelphia County against Zurich. In Count One, pursuant to the Pennsylvania Declaratory Judgments Act,[14] Plaintiffs sought an order, *inter alia*: (1) declaring that Zurich was obligated to defend and indemnify Swedesford and Keystone in the Dadario litigation;[15] and (2) directing Zurich to reimburse Fireman's Fund for all costs expended in the defense of Swedesford and Keystone.[16] In counts Two and Three, Plaintiffs sought compensatory damages for breach of contract and breach of the duty of good faith arising out of Zurich's refusal to defend.[17] Invoking this Court's diversity jurisdiction, Zurich removed the

---

[10] Def.'s Mot. for Summ. J. ¶ 21, 22. Although the Complaint alleged that Schindler was also obligated to name Swedesford and Keystone as additional insureds under a Commercial General Liability Policy, Plaintiffs have withdrawn its claims under that coverage. Def.'s Mot. for Summ. J. ¶ 23; Pl. Mot. for Summ. J. ¶ 23.

[11] Pls.' Resp. to Def.'s's Mot. for Summ. J. Ex. A. (November 13, 2009 Demand Letter).

[12] Pls.' Resp. to Def.'s's Mot. for Summ. J. Ex. D.

[13] Def.'s Mot. for Summ. J. ¶ 8; Compl. ¶¶ 23–26.

[14] 42 Pa. Cons. Stat. Ann. § 7531, *et seq.*

[15] Compl. ¶ 70.

[16] Compl. ¶ 70.

[17] Compl. ¶¶ 73–82.

action to this Court on August 24, 2010.[18]

On January 31, 2011, a jury found Swedesford, Keystone, and Schindler negligent, but concluded that their negligence was not a factual cause of Dadario's injuries and did not award him damages.[19] Thus, the pending motions, filed March 21, 2011, solely present the question of whether Zurich had an obligation to defend Swedesford and Keystone pursuant to the OCPL policy.[20]

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[22] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[23]

In considering a summary judgment motion, the Court does not weigh the evidence or make

---

[18] Doc. No. 1. The Parties are completely diverse and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1332, 1441. Plaintiffs Swedesford and Keystone are both limited partnerships with their principal place of business in Pennsylvania. Notice of Removal ¶¶ 3, 4. Plaintiff Fireman's Fund is incorporated and has its principal place of business in California. Notice of Removal ¶ 2. Defendant Zurich is incorporated under the laws of New York and has its principal place of business in Illinois. Notice of Removal ¶ 6.

[19] Def.'s Mot. for Summ. J. ¶¶ 17, 18; Pls.' Mot. for Summ. J. ¶ I.

[20] Def.'s Mot. for Summ. J. ¶ 18.

[21] Fed. R. Civ. P. 56(a) (2011).

[22] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[23] Id.

credibility determinations; moreover, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[24] The same standard applies when there are cross-motions for summary judgment.[25]

### III. DISCUSSION

A.  INSURER'S DUTY TO DEFEND

Under Pennsylvania law,[26] "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."[27] To determine whether a claim against an insured is potentially covered, the Court compares "the four corners of the insurance contract to the four corners of the complaint."[28] "As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend."[29] Conversely, there is no duty to defend where it is apparent that the policy does not cover the injuries alleged.[30] The allegations in the underlying complaint—and not the causes of action pleaded—must inform the court's determination in this

---

[24] Anderson, 477 U.S. at 255.

[25] Lawerence v. City of Phila., 527 F. 3d 299, 310 (3d Cir. 2008).

[26] The Parties do not dispute that Pennsylvania law governs the interpretation of the contract of insurance at issue here.

[27] Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010).

[28] Id.

[29] Id. (quoting Casper v. Am. Guar. & Liab. Ins. Co., 408 Pa. 426 (1962)).

[30] Britamco Underwriters, Inc. v. O'Hagan, No. 94-1160, 1994 WL 477551, at *3 (E.D. Pa. Sept. 2, 1994) aff'd, 60 F.3d 814 (3d Cir. 1995).

respect.[31]  Similarly, "it is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."[32]  Thus, to determine whether a claim may come within the coverage of a policy, "the court must ascertain the scope of the insurance coverage, and then analyze the allegations in the complaint."[33]  Where proceedings as to liability occur before a determination is made about whether there is a duty to defend, an insurer declines to defend at its own risk.[34]

B.  INTERPRETATION OF CONTRACTS FOR INSURANCE UNDER PENNSYLVANIA LAW

The law in Pennsylvania with respect to the interpretation of insurance contracts is "well settled."[35]  Interpretation of such a contract is a matter of law for the court.[36]  The aim of a court in

---

[31] QBE Ins. Corp. v. M&S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007). In QBE Ins. Corp., the court went on to add, "[i]ndeed, 'to allow the manner in which the complainant frames the request for redress to control in [such a] case . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." Id., (quoting Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)).

[32] D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. Ct. 1986) (citing Warner v. Emp'rs' Liab. Assurance Corp.,133 A.2d 231 (Pa. 1957); Wilson v. Maryland Cas. Co., 105 A.2d 304 (Pa. 1954)).

[33] Sphere Drake, P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208, 1210 (Pa. Super. Ct. 1994)).

[34] Belser v. Rockwood Cas. Ins. Co., 791 A.2d 1216, 1219-20 (Pa. Super. Ct. 2002) (citing Bd. of Pub. Educ. of the Sch. Dist. v. Nat'l Union Fire Ins. Co., 709 A.2d 910, 913 (Pa. Super. Ct. 1998) (en banc) ("[a]n insurer who refuses to defend its insured from the outset does so at its peril . . . because the duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy").

[35] Regents of Mercersberg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 171 (3d Cir. 2006).

[36] Lexington Ins. v. Western Penn. Hosp., 423 F.3d 318, 323 (3d Cir. 2005).  Moreover, Pennsylvania law makes it the province of the courts to construe insurance contracts to ascertain "the existence or non-existence of coverage."  Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007).

interpreting an insurance contract is to determine the intent of the parties.[37] The inquiry begins with the language of the policy in question.[38] The "policy must be read as a whole and construed according to the plain meaning of its terms."[39]

A court must give effect to unambiguous language in an insurance contract.[40] "Contractual language is ambiguous 'if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.'"[41] Ambiguous language in an insurance contract must be construed against the insurer.[42] Such construction "further[s] the contract's prime purpose of indemnification," and recognizes the fact that the insurer controls the policy language establishing the scope of coverage.[43] However, the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have repeatedly warned courts against straining to find ambiguity in insurance contract language.[44] Indeed, policy language should be read to avoid creating or finding ambiguity

---

[37] Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983); Regents of Mercersberg College, 458 F.3d at 171 (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

[38] Standard Venetian Blind Co., 469 A.2d at 566.

[39] C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981).

[40] Lexington Ins., 423 F.3d at 323.

[41] Regents of Mercersberg Coll., 458 F.3d at 172 (quoting Hutchinson v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)).

[42] Standard Venetian Blind Co., 469 A.2d at 566.

[43] Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 893 (Pa. 2006).

[44] See Lexington Ins., 423 F.3d at 323 (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)); see also St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981) ("a court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them").

wherever possible.[45]

While the insured has the burden of demonstrating coverage under an insurance policy,[46] the insurer has the burden of demonstrating the applicability of any policy exclusions.[47]  A court must construe policy exclusions against the insurer,[48] enforcing them only if plainly displayed and clearly applicable.[49]

## IV. APPLICATION

The sole question presented by the instant motions for summary judgment is whether, under the OCPL policy, Zurich had a duty to defend Swedesford in the Dadario lawsuit.  Zurich disclaims any such duty, arguing that under Pennsylvania law, the allegations in Dadario's complaint did not trigger Zurich's duty to defend.[50]  Alternatively, Zurich asserts that even if the complaint triggered a duty to defend, two provisions of the OCPL policy unambiguously exclude coverage.  Plaintiffs challenge each of these contentions.

A.   DUTY TO DEFEND

Zurich argues that it had no duty to defend Plaintiffs because Dadario's complaint did not

---

[45] USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 198 (3d Cir. 2006); St. Paul Fire & Marine, 655 F.2d at 524.

[46] See, e.g., State Farm Fire & Cas. Co., 589 F.3d 105, 111 (3d. Cir. 2009) (analyzing and applying Pennsylvania Insurance Law); Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (Pa. 1987).

[47] State Farm Fire, 589 F.3d at 111;  Miller v. Boston Ins. Co., 218 A.2d 275, 277 (Pa. 1966).

[48] Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998).

[49] Sphere Drake, 35 F. Supp. 2d at 428 (citing Pac. Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985)).

[50] Def.'s Mot. for Summ. J. ¶¶ 10–11.

specifically allege loss arising either out of operations performed by Schindler for Swedesford and Keystone, or arising from Swedesford and Keystone's supervision of Schindler.[51] Plaintiffs dispute Zurich's interpretation, arguing that Dadario's allegation of negligent supervision of elevator work is sufficiently broad to trigger the duty to defend.[52] In Plaintiff's view, "[t]here can be no question that the claim involved the potential for liability arising out of Schindler's negligent performance of its inspection and maintenance operations."[53]

To determine whether Zurich had a duty to defend Plaintiffs, the Court compares the terms of the OCPL policy with the nature of the allegations in the underlying complaint. Zurich's OCPL insurance policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking those damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .[54]

The insurance applies if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" and arises out of:
>
> (a) Operations performed for you by the "contractor" at the location specified in the Declarations; or
>
> (b) Your acts or omissions in connection with the general supervision of such operations.

---

[51] Br. in Supp. of the Mot. for Summ. J. of Def.'s Zurich Am. Ins. Co. at 10 ("Brief in Supp.") [doc. no. 11-2].

[52] Pls. ' Br. in Opp'n to Def.'s's Mot. Summ. at 1 ("Opp'n") [doc. no. 13].

[53] Opp'n at 6.

[54] Br. in Supp. Ex. E at I.1.a ("OCPL policy").

The Dadario complaint alleged that Swedesford and Keystone:

> [H]ad under [their] care, *supervision*, control, maintenance and/or was responsible for the care, maintenance and condition of the said property located at 530 East Swedesford Road, Wayne Pennsylvania, including but not limited to the elevators in the building.[55]

The complaint further alleged that the "negligence and carelessness of Defendant, through its *agents*, servants, workmen, and employees,"[56] led to the "defective, uneven and/or irregular condition in one of the elevators, rendering it unsafe and dangerous."[57] Specifically, Dadario alleged negligence in "failing to properly maintain the elevators in its building;" "failing to use due care and employ reasonable skill in performing maintenance and inspections of the said elevators in its building;" and "failing to properly inspect the elevators in its building."[58]

Defendant's contention that the Dadario complaint need specifically contain allegations against Schindler in order to trigger the duty to defend is inconsistent with the Pennsylvania courts' view that "[t]he broad duty to defend that exists in Pennsylvania encourages insurance companies to construe their insurance contract broadly and to defend all actions where there is any potential coverage."[59] It is unnecessary that "[t]he underlying complaint . . . track the policy language for there to be coverage."[60] Instead, the test is whether the complaint "might or might not fall within

---

[55] Dadario Complaint ¶¶ 4, 17 (emphasis added).

[56] Dadario Complaint ¶ 20.

[57] Dadario Complaint ¶ ¶ 6, 7 (emphasis added).

[58] Dadario Complaint ¶ 20 (a), (b), & (d).

[59] Am & Foreign Ins. Co., 2 A.3d at 543.

[60] Lucker Mfg., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994).

the policy's coverage."[61] Because the Dadario complaint alleged an injury[62] caused, in part, by negligent supervision of the maintenance of an elevator at 530 East and the negligent acts of Defendant's agents, the claim against Swedesford and Keystone "might potentially be covered."[63] Thus, Zurich's duty to defend was triggered.

B.   EXCLUSIONS

Zurich argues that even if the Complaint triggered its duty to defend, coverage is excluded by Section 2.c. of the OCPL policy, which reads:

> "Bodily injury" or property damage which occurs after the earlier of the following times:
> 
> (1)   When all "work" on the project (other than service, maintenance or repairs) to be performed for you by the "contractor" at the site of the covered operations has been completed; or
> 
> (2)   When the portion of the "contractor's" "work", out of which the injury or damage arises, has been put to its intended use by any person or organization, other than another contractor or subcontractor working directly or indirectly for the "contractor" or as part of the same project."

Zurich interprets the provision to preclude coverage at times when Schindler was not performing work on the elevator.[64] Because Dadario was entering the elevator when he was injured, Zurich contends that the "work" (i.e., inspection and maintenance that occured 5 days

---

[61] Am. & Foreign Ins. Co., 2 A.3d at 541.

[62] It is undisputed that Dadario sought damages for "bodily injury" caused by an "occurrence" during the policy period. The policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time;" an "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." See OCPL V.2, V.11.

[63] Am. & Foreign Ins. Co., 2 A.3d at 541.

[64] Def.'s Mot. for Summ. J. at 12.

prior) had been put to its intended use at the time of the accident.  Plaintiffs argue that the provision is ambiguous because it is subject to more than one reasonable interpretation.[65]

This debate boils down to the correct definition of "work."  Defendants define work as a discreet act of servicing or maintaining an elevator; Plaintiffs define it as an ongoing service obligation which cannot be "completed" until the termination of the service and maintenance contract.  In Plaintiff's view, the provision is inapplicable to its contract with Schindler because an ongoing maintenance and inspection service is "work" that can never be put to an "intended use."  According to Plaintiff, this type of provision is "not intended to apply to a service and maintenance contract" and was "intended to apply to a contract for the affirmative installation of a particular piece of equipment or construction of a physical structure."

To accept Plaintiff's argument is to render the "intended use" and "work completed" exclusions as meaningless.  But "[i]t is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible,"[66] and "[a] court may not disregard a provision in a contract if a reasonable meaning may be ascertained therefrom."[67]  And although we bear in mind that "[e]xclusions are always strictly construed against the insurer and in favor of the insured,"[68] we conclude that this provision is clear and unambiguous.[69]

---

[65] Pls.' Resp. at 9.

[66] Neal D. Ivey Co. v. Franklin Assocs., 370 Pa. 225, 232 (Pa. 1952).

[67] Jarl Inv., L.P. v. Fleck, 937 A.2d 1113, 1122 (Pa. Super. 2007) (citation & quotation omitted).

[68] Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 297 (3d Cir. 2001).

[69] Courts outside of Pennsylvania and this Circuit agree with this conclusion.  See, e.g., James v. Hyatt Corp. of Del., 981 F.2d 810, 814 (5th Cir. 1993); Liberty Mut. Fire Ins. Co. v. St. Paul Fire &

The clauses of the provision are disjunctive, and therefore apply to different scenarios. The first, "work completed" clause, plainly excludes service and maintenance from "work" ( ". . . all 'work' on the *project* (*other than service, maintenance or repairs*) to be performed"). By its terms, the clause narrows "work" to *projects*, which it distinguishes from maintenance, service, and repair work. The second clause, however, does not so narrowly define work. Rather than refer to "project," it refers to a "portion of work." And, unlike the preceding clause, it does not limit work to "projects (other than service, maintenance or repairs)." Thus, the term "work" in the "intended use" clause sweeps more broadly and contemplates ongoing work that might be completed in "portion[s]"— like maintenance, service or repairs.[70] Therefore, the "intended use" exclusion applies to the matter at hand.

It is undisputed that at the time of the accident, Schindler's employees were not on the premises and that the elevator was in service. The parties do not dispute that the intended use "of an elevator in an office building is to transport passengers, office supplies, and equipment."[71] Because the injury occurred at a time when the elevator was being put to its intended use, coverage is unambiguously excluded by the OCPL contract.

---

Marine Ins. Co., 842 N.E.2d 170, 340–41 (Ill. App. Ct. 2005); Zurich Ins. Co. v. Principal Mut. Ins. Co., 761 A.2d 344, 652–53 (Md. Ct. Spec. App. 2000); Trizec Prop. Inc., and Travelers Ins. Co., 1999 WL 33452700, No. 203144, at *3 (March 26, 1999 Mich. Ct. App.).

[70] See also Trizec Prop. Inc., 1999 WL 33452700 at * 2 (rejecting Plaintiff's attempt to characterize work covered by the policy as elevator maintenance continuously in progress and therefore never completed); Liberty Mut. Fire Ins. Co., 842 N.E.2d at 340–41 (Ill. App. Ct. 2005);

[71] Zurich Ins. Co., 761 A.2d at 348 (Md. Ct. Spec. App. 2000).

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment will be denied and and Defendant's Motion for Summary Judgment is granted.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIREMAN'S FUND INSURANCE CO., 580 & 530 SWEDESFORD ASSOCIATES, LP & KEYSTONE PROPERTY GROUP, GP, LLC,**   Plaintiffs, : : : : : : : : : : : : : | **CIVIL ACTION**  **NO. 10-cv-4293** | |
| v. | | |
| **ZURICH AMERICAN INSURANCE CO.,**   Defendant. | | |

## ORDER

**AND NOW**, this 19th day of July 2011, it is hereby **ORDERED** that Plaintiff's Motion for Partial Summary Judgment [doc. no. 12] is **DENIED**.  Defendant's Motion for Summary Judgment on all counts of Plaintiff's complaint [doc. no. 11] is **GRANTED.**  The Clerk of Court is directed to mark this case as **CLOSED**.

It is so **ORDERED.**

BY THE COURT:

_____
**HON. CYNTHIA M. RUFE**